[Crim. No. 3401.   Third Dist.   July 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROSCOE GLENN CLAYTON et al., Defendants and Appellants.

---

Roscoe Glenn Clayton, in pro. per., and Carolyn L. Kemmler, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, and Edward Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendants Rust and Clayton were charged with robbery from O. H. Leeper while they were armed with a deadly weapon. A jury found them guilty of robbery in the second degree, that is, of taking property from the person or immediate presence of the possessor by means of force or fear but without being armed with a dangerous or deadly weapon.[1] Defendants appeal.

[1]Penal Code section 211 defines "robbery" as follows:
"Robbery is the felonious taking of personal property in the posses-

■ Viewed most favorably to the prosecution, the evidence shows the following: Mr. and Mrs. O. H. Leeper operated an automobile service station in the City of Ripon. On May 14, 1962, at about 5 p.m. defendant Rust drove his automobile into the service station. Clayton and an unidentified third man were passengers in the car. Leeper waited on them. Rust asked for $1.00 worth of gas. Rust got out of his vehicle and entered the station. He found Mrs. Leeper inside. On Mr. Leeper's instruction, he paid her $1.00 for the gas. The three men then left.

Shortly thereafter Mrs. Leeper left the station. Rust and his two passengers returned in the same vehicle 15 to 20 minutes later and ordered another $1.00 worth of gasoline. Clayton got out of the car, followed Leeper into the station, ordered Leeper to give him all the money in the money box, pulled a knife from beneath his shirt and said: "Give me all that is in that box, damned fast, or I will cut your damned head off." Leeper described the knife as an old butcher knife with a blade approximately 7 inches long. Leeper gave Clayton the money and a coin container or drawer (described as a "muffin tin"). As the men drove away Leeper noted the automobile license number and called the police. He estimated that they took approximately $141.30.

By means of the license number the police identified the vehicle. Later that evening in Manteca they found the car parked behind a bar. They entered the premises and saw the defendants and a third man sitting at the bar. Leeper was with the officers. The officers put the men under arrest and took them to the rear of the bar for questioning. At that time the officers overheard Rust tell both Clayton and the third man to "Keep your mouth shut as [to] how it happened this afternoon."

Both defendants took the stand in their own defense. They admitted getting a dollar's worth of gasoline from Leeper but denied returning to the service station and taking the money.

---

sion of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Penal Code section 211a provides:

"All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, and the robbery of any person who is performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire, is robbery in the first degree. All other kinds of robbery are of the second degree."

Earlier both defendants had made statements in which they denied that they had ever been in Ripon. On the stand both defendants admitted that the statements were incorrect. Both Mr. and Mrs. Leeper identified defendants as the persons who came to their station the first time, and Mr. Leeper identified defendants as the persons who appeared the second time and took the money. Rust admitted ownership of the car identified by Leeper.

■ Defendants correctly state that conviction of robbery requires proof of force or fear. (*People* v. *Reade,* 197 Cal. App.2d 509 [17 Cal.Rptr. 328].) ■ Pointing out that the second degree robbery verdict impliedly rejected evidence of the butcher knife and that there is no other proof of a weapon used in perpetration of the offense, defendants contend that the required proof of force or fear is lacking, indeed, that it is contradicted by the jury's refusal to bring in a first degree robbery verdict. Absence of a knife did not gainsay other means of fear inducement. (*People* v. *Winters,* 163 Cal.App.2d 619, 623-624 [329 P.2d 743].) There was a peremptory command for the production of money; there was the threat "I will cut your damned head off" and the physical odds of three men to the single victim. In addition, Leeper testified to his own fear. On the assumption that the jury impliedly rejected testimony of use of the butcher knife, nevertheless these other items of evidence amply support the finding of a taking by fear.

■ At the time of his arrest in the bar Rust was searched and a pocket knife with an open blade fell from his belt. Over timely defense objection the pocket knife was admitted in evidence and displayed to the jury. There was no contention that it was used in the robbery. Defendants assign prejudicial error. Indeed, the court erred at this point.

■ When the prosecution relies on a specific weapon or type of weapon, it is error to admit evidence of some other weapon found in the defendant's possession, since such evidence tends to show not that he committed the crime, but only that he is the sort of person who carries deadly weapons. (*People* v. *Riser,* 47 Cal.2d 566, 577 [305 P.2d 1].)

The State argues that the ruling, however erroneous, was not prejudicial because the jury found defendants guilty only of second degree robbery, thus indicating rejection of the weapon element. The argument ignores the very basis for the exclusion. Evidence of this sort might tempt jurors to punish a defendant for his criminal proclivities, notwithstand-

ing a reasonable doubt as to his guilt of any of the specific offenses for which he is on trial.

■ Rust's pocket knife, admittedly not used in the robbery, was also the subject of the following remark made in the course of the deputy district attorney's opening statement to the jury: "Mr. Rust, at the time that he was apprehended, had this knife with him and at the time that he was apprehended, this knife was in an open position stuck in his belt and on his person, the same method of operation used by his partner, Mr. Clayton, when he robbed Mr. Leeper with this knife—not this same knife. Evidently Mr. Rust had a knife concealed on his person with an open blade and was also ready for action, if necessary—the exact same M. O. by both parties.

"I won't hand this around to you because you might cut yourselves, but I think you can see what might be incurred by the use of this knife."

Apparently the initials "M. O." were intended to refer back to the phrase "method of operation" or to *modus operandi,* a standard crime detection term. What the jurors understood by these initials is quite speculative. In any event, it is plain that the prosecutor was referring to a knife which played no part in the crime. He went so far as to hold the knife in front of the jurors in advance of its admission in evidence. There was a defense objection and the deputy district attorney's statement is now assigned as misconduct. Indeed it was. Just as the rule stated in *People* v. *Riser, supra,* 47 Cal.2d 566 [305 P.2d 1], effectually barred use of the knife in evidence, so it prevented any jury reference to it.

Adequate trial preparation on the part of the prosecutor would have included an inquiry into admissibility of the pocket knife. A careful prosecutor keeps his trial record free from error. Unlike a trial judge, counsel have time and opportunity for advance inquiry into evidentiary problems. The *Riser* case, decided by the State Supreme Court in 1956, cites four earlier reported decisions as authority for exclusion of "other" weapons. Shepard's Citator indicates that *Riser* has been cited on this point by five later California decisions. The rule of exclusion is described in Mr. Witkin's California Evidence text at page 350 (§ 312) and in 18 California Jurisprudence 2d, section 181, at page 642. The late Judge Fricke's well-known handbook, California Criminal Evidence (5th ed. 1960), states the rule at page 355. The point is not at all obscure.

We have examined the record to resolve in our minds whether the combined effect of these two errors was a miscarriage of justice. (Cal. Const., art. VI, § 4½.) The evidence was not closely balanced. It was heavily weighted on the side of guilt. After examining the cause, we have reached the opinion that there was no reasonable probability of a jury verdict more favorable to these defendants in the absence of the errors. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) Consequently we hold that these errors do not require reversal.

After his court-appointed counsel had filed the opening brief on appeal, defendant Rust submitted a brief, purportedly *in propria persona*, raising a number of arguments not asserted by counsel. *Pro se* documents filed by a defendant who has counsel of record will not be recognized, and we need not enumerate or discuss Rust's contentions. (*People* v. *Mattson*, 51 Cal.2d 777, 798 [336 P.2d 937].) We have, however, considered his contentions and find them to be without merit.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

The petition of appellant Clayton for a hearing by the Supreme Court was denied September 11, 1963.