[Crim. No. 11355. In Bank. Nov. 9, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM RANDOLPH MADDOX, JR., Defendant and Appellant.

William Randolph Maddox, Jr., in pro. per., and Don Edgar Burris, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Frank O. Bell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

MOSK, J.—Defendant appeals from a judgment convicting him of one count of attempted escape from the custody of an officer while charged with a felony (Pen. Code, § 4532, subd. (b)) and one count of battery (Pen. Code, § 242).

The question presented is whether a defendant who properly exercises his constitutional right to represent himself is entitled to a reasonable continuance for the purpose of preparing his defense. We have concluded that upon timely request such a continuance should be granted, and that its denial in the case at bar requires the judgment to be reversed.

The record discloses the following chronology of events:

On November 10, 1965, defendant and one Larry West went on trial in department 119 of the Los Angeles Superior Court on charges of robbery and kidnaping for the purpose of robbery. Police Officer Sanders was detailed to escort them from a holding cell on the fourth floor of the Brunswig Building to the courtroom on the fifth floor. He handcuffed the prisoners to each other, and the two men started up a stairway in front of him. A brief fist fight broke out between defendant and Officer Sanders, and the latter called for help. A number of fellow officers arrived on the scene and quickly subdued defendant.

On December 27, an information was filed charging defend-

ant with attempted escape and battery on Officer Sanders. He was not represented by counsel, and requested continuances until January 10, 1966.

On January 10, the public defender was appointed to represent defendant in this matter.

On January 14, defendant appeared and moved to represent himself in propria persona. The motion was denied. Defendant then entered a plea of not guilty, and the case was set for trial in department 105 before Judge John G. Barnes.

On March 2, defendant's petition for writ of mandate to compel observance of his right to represent himself was denied by Judge Barnes.

On March 10, the public defender moved to be relieved as counsel so that defendant could appear in propria persona. The motion was denied "without prejudice," and the public defender was ordered to give his copy of the preliminary hearing transcript to defendant.

On March 18, defendant's petition for writ of mandate to secure the right to represent himself was transferred from this court to the Court of Appeal, and on March 21 the petition was denied without opinion.

On March 28, the case was called for trial. At the outset of the proceedings the public defender, Mr. Spencer, renewed his motion to be relieved for the purpose of allowing defendant to proceed in propria persona. Defendant explained that Mr. Spencer had not subpoenaed a number of witnesses whom he desired to call. Judge Barnes inquired what the testimony of these witnesses would be, but defendant was reluctant to answer in the presence of the district attorney and the prospective jurors. The salient points of the colloquy are as follows:

"THE COURT: . . . Now, you have the right under the Constitution to represent yourself at this trial. We are ready for trial here this morning.

"THE DEFENDANT: Well, I am not ready, your Honor.

"THE COURT: Well, the District Attorney is ready and there's no reason why you shouldn't be ready.

"THE DEFENDANT: Oh, yes, there is, your Honor. I haven't had the opportunity to look—to go to the Law Library to prepare to subpoena any witnesses. . . .

"THE COURT: Well, this case is going to go forward, Mr. Maddox.

"THE DEFENDANT: Well, your Honor, I would like the

record to show I have running objections as to prohibit any further proceedings in this case. . . .

"The Court: You want to continue this matter to get those witnesses, do you?

"The Defendant: Yes, I do.

"The Court: And if you would tell me what they will testify to and who they are, I will consider your motion to continue.

"The Defendant: Your Honor, like I said before, it would be highly prejudicial, not under oath, to let the DA know what my defense is at this early stage.

"The Court: I see no prejudice in that at all."

Finally acknowledging that "If you insist on representing yourself here at this trial, I can't stop you from it," the court admonished defendant that he would receive no greater consideration by reason of his decision and ordered Mr. Spencer relieved of further duty.

Immediately thereafter the court directed the impaneling of the jury. Defendant protested, saying that "since I have discovered that I am representing myself in this case, I am not adequately prepared either physically or mentally at this time to defend myself in this matter; therefore I would like to continue this for 60 days." The motion was denied. Defendant thereupon moved to disqualify Judge Barnes under Code of Civil Procedure section 170.6, and that motion too was denied. Defendant then moved "to prohibit any further proceedings because I'm not adequately prepared to defend myself. I have no witnesses." The court replied that defendant previously had adequate opportunities and "we are prepared to proceed this morning." During the selection of the jury defendant again requested the court "to stop right now, to dismiss the jury, to let the defendant have time to get witnesses on his behalf so he can adequately prepare the defense. . . ." The court noted the names and addresses of several witnesses mentioned by defendant, but did not grant a continuance.

The taking of testimony began after the noon recess, and the People's case was concluded the same day. The following morning defendant was able to put on the stand only one useful witness, his former codefendant West, who had been easy to find as he was incarcerated in the building in which the courtroom was situated. Most of defendant's other witnesses, however, could not be located by the process servers in time for resumption of the proceedings that day. The court

denied defendant's request for a list of the names of the deputy sheriffs assigned to the Brunswig Building on November 10, 1965, whom he wished to call as witnesses to establish Officer Sanders' hostility towards him, and also denied his request for a transcript of the previous day's testimony for impeachment purposes.

Defendant then moved to dismiss, stating in part, "I have requested transcripts—the daily transcript of this trial. I have requested a photostatic copy of the list of the names of the officers that were in that building that day. I have requested to have at least five days preparation, five days time so that I could at least seek some type of legal knowledge so that I could adequately prepare myself in this case. . . . I was forced mentally and physically to go to trial to select a jury when I had no knowledge of the procedures of selecting a jury or impaneling a jury or whatsoever to do with the jury." After further discussion the colloquy concluded:

"THE COURT: Your motions are denied.

"THE DEFENDANT: Without reason?

"THE COURT: I have my reasons for it.

"THE DEFENDANT: All right.

"THE COURT: I don't believe your motions are valid. That's the reason."

The appeal is from the ensuing judgments of conviction.

■ The defendant in a criminal case has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so. (Cal. Const., art. I, § 13; *People* v. *Carter* (1967) 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214], and cases there cited.)[1] No question has ever been raised in this case as to defendant's competence to make that decision. Accordingly, the court erred in denying his motion to proceed in propria persona on January 14, 1966; and the error was repeated each time the subsequent efforts of defendant or the public defender to secure the observance of this right were frustrated.

The court finally allowed defendant to represent himself, but its sudden about-face on this issue occurred on the very

---

[1] We are not here concerned with the practical qualifications to that rule in cases in which the defendant wishes to enter a guilty plea to a charge of felony before the arraigning magistrate (Pen. Code, § 859a), a waiver of his right to a preliminary examination (Pen. Code, § 860), or a guilty plea to a crime punishable by death or life imprisonment without possibility of parole (Pen. Code, § 1018). For the relation between these statutes and the defendant's constitutional right to represent himself, see *People* v. *Ballentine* (1952) 39 Cal.2d 193 [246 P.2d 35].

morning the trial was to begin. The dispositive question, therefore, is whether defendant was entitled to a reasonable continuance at that point to prepare himself for trial.

The problems posed by defense requests for continuances at the start or in the course of trial have recently engaged our attention in varying contexts. (See, e.g., *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304]; *People* v. *Carter* (1967) *supra,* 66 Cal.2d 666; *People* v. *Crovedi* (1966) 65 Cal.2d 199 [53 Cal.Rptr. 284, 416 P.2d 868].) In *Jennings* we reiterated that " 'While the determination of whether in any given case a continuance should be granted "normally rests in the discretion of the trial court" (*People* v. *Buckowski* (1951) 37 Cal.2d 629, 631 [233 P.2d 912]), that discretion may not be exercised in such a manner as to deprive the defendant of a reasonable opportunity to prepare his defense. "That counsel for a defendant has a right to reasonable opportunity to prepare for a trial is as fundamental as is the right to counsel." (*People* v. *Sarazzawski* (1945) 27 Cal.2d 7, 17 [161 P.2d 934]; accord, *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 302 [10 Cal.Rptr. 842, 359 P.2d 274].)' " (*Jennings* v. *Superior Court* (1967) *supra,* at pp. 875-876 of 66 Cal.2d, quoting from *People* v. *Murphy* (1963) 59 Cal.2d 818, 825 [31 Cal.Rptr. 306, 382 P.2d 346].)

The rationale, of course, is that a counsel who has been denied the opportunity to prepare is the equivalent of no counsel at all: "the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel." (*Avery* v. *Alabama* (1940) 308 U.S. 444, 446 [84 L.Ed. 377, 379, 60 S.Ct. 321].) Such an accused has not been "accorded the right of counsel in any substantial sense. . . . The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." (*Powell* v. *Alabama* (1932) 287 U.S. 45, 58, 59 [77 L.Ed. 158, 165, 166, 53 S.Ct. 55, 84 A.L.R. 527].)

In short, just as a defendant may not be brought to trial too late (Cal. Const., art. I, § 13; Pen. Code, §§ 686,

1382; *Klopfer* v. *North Carolina* (1967) 386 U.S. 213 [18 L.Ed.2d 1, 87 S.Ct. 988]), he may also not be brought to trial too soon, i.e., without adequate opportunity for preparation of his defense (see, e.g., *In re Newbern* (1960) 53 Cal.2d 786, 790 [3 Cal.Rptr. 364, 350 P.2d 116]; *Cornell* v. *Superior Court* (1959) 52 Cal.2d 99, 102-103 [338 P.2d 447]; *In re Ochse* (1951) 38 Cal.2d 230, 231 [238 P.2d 561]; *People* v. *Sarazzawski* (1945) *supra*, 27 Cal.2d 7, 17; cf. *People* v. *Douglas* (1964) 61 Cal.2d 430, 434 [38 Cal.Rptr. 384, 392 P.2d 964]). Implementing this rule, the Legislature has provided that "After his plea, the defendant is entitled to at least five days to prepare for trial." (Pen. Code, § 1049.) A violation of this statute is not just a procedural deficiency, but an error of constitutional dimensions: "forcing petitioner to trial in less than the minimum time provided by statute to prepare a defense, despite requests for a continuance, resulted in a denial of due process of law." (*In re Newbern* (1960) *supra*, 53 Cal.2d 786, 791.)

These principles are equally applicable to a defendant who competently elects to serve as his own attorney. It is true that such a defendant "is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented by counsel." (*People* v. *Mattson* (1959) 51 Cal.2d 777, 794 [336 P.2d 937].) But neither is he entitled to *less* consideration than such persons. In particular he must be given, if he requires it, as much time to prepare for trial as an attorney; and if a reasonable continuance is necessary for this purpose, it must be granted upon timely request. To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel.

Thus in *People* v. *Moss* (1967) 253 Cal.App.2d 248 [61 Cal.Rptr. 107], the public defender was relieved at the defendant's request at the outset of trial because of an irreconcilable difference of opinion which had suddenly arisen over trial tactics. The court "assumed" there were no other counsel available, ordered the defendant to represent himself, and denied a continuance "at this late date because the jury is impaneled and ready to proceed." (*Id.* at p. 249.) Reversing the ensuing judgment of conviction, the Court of Appeal correctly held that the "denial of a continuance for a reasonable time in which to organize the presentation of his

defense'' deprived the defendant ''of his constitutional right to be represented by counsel'' (*id.* at pp. 249-250, 251).[2]

 In the instant case defendant requested a continuance as soon as he received the court's belated permission to proceed in propria persona;[3] it was denied, as was each renewal of the request thereafter. The People contend that defendant was represented by the public defender for two and one-half months prior to trial and hence would have been prepared if he had cooperated with his counsel. The facts, however, are otherwise. Mr. Spencer testified without contradiction that ''On our first interview (i.e., some two months before the trial], is the only time we really spoke about the legal issues in this trial. . . . And after that time, whenever we met, it was your position you wished to represent yourself.''[4] Mr. Spencer acceded to defendant's wishes, and at an early opportunity moved to be relieved as counsel. It follows that after the first interview defendant was not ''represented by'' Mr. Spencer in any meaningful sense, and cannot be deemed to have prepared himself for trial by reason of that relationship. Nor can it be said that defendant nevertheless ''should have'' cooperated with Mr. Spencer during the pretrial period, for to do so would be inconsistent with our determination that he was entitled to assert his right to represent himself.

 The People also urge that defendant did not sufficiently show the need for a continuance either to obtain witnesses or to undertake legal research. The argument misses

---

[2] We express no opinion as to the soundness of the Court of Appeal's alternate holding that the right to counsel ''encompasses the right to the appointment of different counsel when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic.'' (*Id.* at p. 251.) Here, defendant did not seek ''the appointment of different counsel'' but simply the right to represent himself.

[3] The 60-day continuance first requested by defendant was probably excessive; but the court was not bound by the figure specified, and in any event defendant subsequently reduced his request to five days.

[4] On cross-examination Mr. Spencer explained:

''Q Now, sir, you say you had your original interview with this defendant when he told you some version of his story, is that correct? A That is right.

''Q And then after that, did he refuse to discuss the matter with you any more? A Well, believe it or not our conversations were very friendly; but so far as the case itself, he indicated, and very pleasantly, that for reasons best known to himself, that he wished to represent himself in this lawsuit and had so informed the Court. We never had an unpleasant word, so far as he and I were concerned.

''Q Well, did he refuse to discuss the case any further with you? A Yes. At least we didn't go into anything—any defense matters any further.''

the mark. We are not here concerned with the validity of those or any other particular statutory grounds for continuing the trial; we vindicate, rather, defendant's general constitutional right to adequate time for the preparation of his defense.[5]

We do not condone the device of claiming the right to appear in propria persona for the purpose merely of delaying the trial (see, e.g., *People* v. *Duncan* (1959) 175 Cal.App.2d 372, 381-382 [346 P.2d 521]), but there is neither allegation nor evidence of such abuse here. Nor do we overlook the legislative policy in favor of prompt disposition of criminal cases and against unnecessary continuances (Pen. Code, § 1050); that policy, however commendable in intent, does not transcend any of the basic elements of due process of law. As we observed in *People* v. *Crovedi* (1966) *supra,* 65 Cal.2d 199, 209, ''We do not demand prescience of trial courts faced with decisions involving the right of representation by counsel—but we must require of them a resourceful diligence directed toward the protection of that right to the fullest extent consistent with effective judicial administration.''

Defendant's remaining contentions are either without merit or unlikely to arise upon a retrial.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[5]In any event, defendant's showing on each of the two grounds mentioned was sufficient as a matter of law. As to the first, although the court ordered subpoenas for all the witnesses actually named by defendant, the record establishes that most of them could not be reached in the few hours available to the process servers. Nor, in the case of the list of deputy sheriffs assigned to the Brunswig Building on November 10, 1965, was defendant asking the court to locate private persons whose names and addresses were unknown (see, e.g., *People* v. *Sullivan* (1962) 206 Cal.App.2d 36, 41 [23 Cal.Rptr. 558]); instead, the reference was to the sheriffs on duty at a specific facility on a specific date, facts which should have been easily ascertainable from official records.

As to the use of the law library, the present case is controlled not by the rule that a convict in prison has no enforceable right to engage in legal research (*In re Allison* (1967) 66 Cal.2d 282, 289 [57 Cal.Rptr. 593, 425 P.2d 193]), but by the very different rule that a defendant awaiting trial in propria persona should, ''at a minimum, be allowed reasonable access to such legal materials as are available at the facility in which he is confined'' and ''in many felony cases the minimum may not be sufficient'' (*People* v. *Carter* (1967) *supra,* 66 Cal.2d 666, 672). The latter requirement was not fulfilled here by the circumstance that defendant had been allowed to use the law library on March 23-25, 1966, to prepare himself in another pending case, as it was not until March 28 that he learned he would be permitted to proceed in propria persona in the case at bar.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the Court of Appeal in *People* v. *Maddox* (Cal.App.) 59 Cal.Rptr. 500.