[Crim. No. 13863. Second Dist., Div. Five. June 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED ALDANA RUIZ, Defendant and Appellant.

James M. Parker, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward J. Horowitz, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—After a preliminary hearing, defendant was charged by information with violating section 12021 of the Penal Code (a convicted felon possessing a revolver). At the preliminary hearing defendant was represented by a deputy public defender. The preliminary hearing took place January 27, 1967. On February 10, 1967, defendant appeared in Department 100 of the Superior Court of Los Angeles County. He was informed of the charge against him. He moved to have a counsel of his own choosing appointed or, in the alternative, to proceed in propria persona. He had no money to hire an attorney. His request was denied, and the public defender was appointed to represent him. On February 17, 1967, the defendant again appeared before the judge and pleaded not guilty to the charge against him. He renewed his motion to proceed in propria persona or to have counsel of his own choice, and the motion was again denied. On March 6, 1967, defendant appeared in Department 110 before a different judge. Defendant again renewed his motions to proceed in propria persona or to have counsel of his own choice, and he made a motion pursuant to Penal Code section 995. Both motions were denied. On March 10, 1967, the defendant again appeared in Department 100 before the same judge who had

theretofore heard his motion in that department. He renewed the same motion. The motion was again denied, and the action was reset for trial. On March 29, 1967, the matter came to trial in Department 102 before the third judge. The defendant renewed his request to proceed in propria persona, or for counsel of his own choosing. The requests were denied. Proceeding with the public defender as counsel, the defendant waived trial by jury and submitted the matter on the testimony contained in the transcript of the preliminary hearing, subject to the court's rulings. The defendant testified in his own behalf. The court found the alleged prior felony conviction for violation of Health and Safety Code section 11500 to be true and the defendant guilty as charged. Probation was denied, and the defendant was sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment.

During certain of the instances when the defendant moved to proceed without the public defender, the court and the accused participated in colloquies in which defendant's legal capabilities were examined, the law in the general area of the charged crime and procedure were explained, and the disadvantages of proceeding in propria persona were commented upon. These dialogues will be subsequently referred to as they become relevant to the issues examined in this appeal.

*Facts*

At approximately 10:30 p.m. on January 14, 1967, Officer William Baker of the Los Angeles Police Department and his partner received a call to check a prowler complaint. They went to 126½ West Fifty-Second Street and spoke with a Mrs. Wilson, who told them that she had observed two male Negroes prowling through the alley and the vacant house directly behind hers. The officers made an immediate search of the area and observed an automobile parked, facing the street, in the driveway of the house on the lot directly behind that of Mrs. Wilson's. Both houses on the lot were dark, and it appeared no one was home. Upon approaching the vehicle, the officers observed that there were two men crouched down in it, each carrying a flashlight. The officers asked the occupants what they were doing there, and then asked the person seated on the passenger's side if he had a gun. He replied, "No." Officer Baker then requested the passenger to get out of the car. As he did, without direction of the officer, he raised his hands, lifting the flap of his coat pocket, and revealing a blue steel revolver. Officer Baker warned his partner that possibly

the occupant on the driver's side, hereinafter referred to as the defendant, might also be armed. The partner then ordered the defendant out of the car. A discussion took place between the partner and the defendant in which the defendant indicated he did not feel the policeman had the right to order him out of the car. The policeman then drew his service revolver and again ordered the defendant out of the car, this time at gunpoint. The defendant complied, and when out of the car, placed his hands on the hood of the car and the officer superficially searched him for weapons. The search revealed a 6-inch blue steel revolver containing six live rounds. Twenty-one live rounds were found in the defendant's coat pocket. The weapon was later test fired and found to be operative. After the weapons were found, the two were placed in the police vehicle and advised that they were under arrest. A few minutes later, the police officers asked the owner of the house if he knew the two suspects, and the owner replied that he did, thus confirming an earlier statement by the defendant. When first asked what they were doing there, the suspects had indicated that they knew the owner of the house. It also appears that the area had been victimized by peeping toms and burglars, but the record does not indicate that the officers were aware of that fact.

## Issues

Three issues are presented by this appeal: (1) was the gun recovered during an illegal search and seizure and therefore inadmissible in evidence; (2) should private counsel have been appointed in lieu of the public defender; and (3) should the defendant have been allowed to proceed in propria persona.

## Search and Seizure

██ We find nothing unreasonable in the actions of the law enforcement officers as depicted in the record before us. In all respects, the search and seizure here involved complied with the rule of *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal. Rptr. 18, 380 P.2d 658] and *Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] (Oct. Term 1967, No. 67, Dec. June 10, 1968.)

## Right to the Appointment of a Private Attorney

We recently passed upon the question of an indigent defendant's right to the appointment of a private attorney in lieu of the public defender. In *People* v. *Taylor*, 259 Cal.App.2d 448 [66 Cal.Rptr. 514], we held that

the basic law of the state as set out in *People* v. *Hughes,* 57 Cal.2d 89, 97-100 [17 Cal.Rptr. 617, 367 P.2d 33] still accords with the requirements of due process and equal protection as they have developed since the date of that decision. ██ ██ An indigent's right to counsel is satisfied by the appointment of the public defender, and he is not entitled to the appointment of private counsel merely by choice or whim.

In *Taylor, supra,* absolutely no reason for the request for the appointment of private counsel was given, where in the instant case the following reason for the motion was stated at the time of the hearing on March 10, 1967: "[THE DEFENDANT] : I was inadequately represented by counsel [at the time of the section 995 motion]. I also ask that I be appointed another attorney because I was not satisfied with the assistance of this attorney." The court summarily denied defendant's motion. It became clear at time of trial that the true reason upon which defendant based his claim that he should have private counsel appointed was disagreement with the tactics used by the public defender. ██ ██ The indigent defendant does not have the right to have appointed for him a counsel who will guide the case the way the defendant wants him to. He is entitled to the appointment of a competent counsel who will use his own expertise and judgment to present the best defense. Disagreement over tactics is not an adequate legal ground for the removal of the public defender and the appointment of private counsel. (*People* v. *Bourland,* 247 Cal.App.2d 76 [55 Cal.Rptr. 357].)

### Right To Proceed in Propria Persona

As noted, on five separate occasions during the course of the proceedings against this defendant, he moved the court to allow him to proceed in propria persona. During two of these occasions, rather lengthy discussions took place between the court and the defendant.

Defendant, age 29, had "completed high school and 18 months at a college extension at University of California at Berkeley." Both the high school graduation and the extension course were accomplished when defendant was in prison. The extension course was in the study of criminal law, and defendant claimed a four-year study of his own while he was handling his case on appeal. The instant case is defendant's third case. He also stated he had helped others in the appeals of their cases.

The discourse before Judge Schauer, as well as that before Judge Frazer, reveals that the defendant had more than the minimal competence to spiritedly put forth his position and to understand the ramifications of his decision. True, he could not answer the legal questions put to him with the ease of a trained attorney, but even in this regard, the record indicates a familiarity and experience with criminal law far greater than that possessed by the average layman.[1] The judge made clear that the experience of the prosecutor in criminal trials would cause defendant to be no match in ability against such an adversary. His lack of knowledge and the risks that he was taking were explained to him, and through it all he emphatically insisted on exercising his right to proceed as his own attorney. The defendant urges that he should have been permitted to proceed in propria persona and that it is reversible error not to have permitted him to do so.

The question before us is really threefold: first, does a defendant have a constitutional right to defend in propria persona and without counsel; second, was there an abuse of discretion in the instant case in refusing the defendant the right to proceed in propria persona; and third, in the exercise of this peculiar type of judicial discretion, where there is an abuse, is it subject to the harmless error rule.

■ The California Constitution, article I, section 13 provides that "In criminal prosecutions . . . the party accused shall have the right . . . to appear and defend, in person and with counsel . . ." This right is set forth in like language in section 686 of the Penal Code. Despite what might appear to be the right of a defendant to appear and defend in person and with counsel, this does not include the right to conduct a defense both in person and through counsel. (*People* v. *Northcott*, 209 Cal. 639 [289 P. 634, 70 A.L.R. 806]; 77 A.L.R.2d 1233 et seq., annotation: Right of defendant in criminal cases to conduct defense in person, or to participate with counsel. (A.L.R.2d Later Case Service 73-100, p. 261 et seq. and Supp. p. 55 et seq.).)

In *People* v. *Terry*, 224 Cal.App.2d 415, 418 [36 Cal.Rptr. 722], it is said: "A defendant may waive counsel (*People* v. *Mattson, supra*, 51 Cal.2d 777 [336 P.2d 937]), and since a court usually cannot compel a mentally competent defendant

---

[1]We recognize that the trial judge, last to rule upon defendant's motion, undoubtedly did not have the lengthy transcripts of prior hearings before him, as we do, to aid in determining the question. He was, however, cognizant that there had been the four prior denials of a like motion of defendant.

to accept representation against his will (*id.*, pp. 788-789; *People* v. *Rose*, 42 Cal.App. 540, 553-554 [183 P. 874]) it follows that obdurate insistence by such a defendant must be recognized. The court is, of course, under an obligation to explain to a defendant who desires to represent himself the difficulties he will encounter, and to assure that he understands the risks of that course. It is not, however, required to demand that such a defendant demonstrate or possess 'either the acumen or the learning of a skilled lawyer' (*People* v. *Linden*, 52 Cal.2d 1, 18 [338 P.2d 397].)''

■ The latest declaration of our Supreme Court reaffirms that under our state Constitution, ''The defendant in a criminal case has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so.'' (*People* v. *Maddox*, 67 Cal.2d 647, 651 [63 Cal. Rptr. 371, 433 P.2d 163].)

■ An election may be made by the defendant as to how he wishes to proceed, and where representation is by counsel, there is no right of defendant to personally conduct his case. (*People* v. *Glenn*, 96 Cal.App.2d 859 [216 P.2d 457].)

■ Likewise, when a defendant intelligently waives his right to representation by counsel (*People* v. *Chessman*, 38 Cal.2d 166, 174 [238 P.2d 1001]; *People* v. *Shields*, 232 Cal.App.2d 716 [43 Cal.Rptr. 188]), he is in no position to demand legal assistance during the trial (*In re Connor*, 16 Cal.2d 701 [108 P.2d 10]), and is not entitled to special privileges and advantages (*People* v. *Byrd*, 221 Cal.App.2d 551 [34 Cal.Rptr. 562]). In *People* v. *Mattson*, 51 Cal.2d 777, 794 [336 P.2d 937], the court cautioned as to the need for counsel in order that a defendant might intelligently waive: ''The trial judge in discharging his 'serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver [of the right to counsel] by the accused' (*Johnson* v. *Zerbst* (1938) *supra*, 304 U.S. 458, 465 [82 L.Ed. 1461, 1467, 58 S.Ct. 1019, 146 A.L.R. 357]; *People* v. *Chesser* (1947) *supra*, 29 Cal.2d 815, 821-822 [178 P.2d 761, 170 A.L.R. 246]) has no duty to give defendant a legal education, and the judge has no right, in view of the privilege against self-incrimination, to ask defendant about his understanding of the facts of the case. If the judge's properly limited inquiry concerning the necessity for appointment of counsel suggests that defendant may not comprehend his position then the judge should assign an attorney to consult privately with defendant concerning the latter's need for representation.''

In dealing with this question from a federal constitutional aspect, Judge Medina, speaking for the United States Court of Appeals, Second Circuit, in the case of *United States* v. *Plattner*, 330 F.2d 271, 273-274, said: "Under the Fifth Amendment, no person may be deprived of liberty without due process of law. Minimum requirements of due process in federal criminal trials are set forth in the Sixth Amendment.[2] They include the right of the accused to be informed personally of the accusation, to be confronted by witnesses against him, and to have compulsory process for obtaining witnesses in his favor. Implicit in both amendments is the right of the accused personally to manage and conduct his own defense in a criminal case. . . . This safeguard [to have the assistance of counsel] was surely not intended to limit in any way the absolute and primary right to conduct one's own defense *in propria persona.* Nor is the existence of this right made doubtful by the circumstance that the now all but universal requirement of the assignment of counsel to indigent defendants[5] is the development of a later generation and more enlightened views. . . .

"The right to counsel and the right to defend *pro se* in criminal cases form a single, inseparable bundle of rights, two [faces] of the same coin. Thus we find the choice between the two sometimes discussed in terms of a waiver of the right to counsel, and sometimes in terms of an election to have a lawyer or to defend *pro se.* Viewed in this light the problem is simplicity itself.

"Accordingly, in all cases of this type, no matter how the indigent or other defendant may phrase his prayer for action by the Court, it is incumbent upon the presiding judge, by recorded colloquy with the defendant, to explain to the defendant: that he has the choice between defense by a lawyer and defense *pro se*; that, if he has no means to retain a lawyer of his own choice, the judge will assign a lawyer to defend him, without expense or obligation to him; that he will be given a reasonable time within which to make the choice; that it is advisable to have a lawyer, because of his special skill and training in the law and that the judge

---

[2]The provision for assistance of counsel in criminal cases was made obligatory upon the states by *Gideon* v. *Wainwright*, 372 U.S. 335, 342 [9 L.Ed.2d 799, 804, 83 S.Ct. 792, 93 A.L.R.2d 733].

"[5]See Fed. R. Crim. P. 44; *Johnson* v. *Zerbst, supra* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357]; cf. *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]."

believes it is in the best interest of the defendant to have a lawyer, but that he may, if he elects to do so, waive his right to a lawyer and conduct and manage his defense himself. If the result is a waiver of the right to counsel and an election to defend *pro se*, the presiding judge should conduct some sort of inquiry bearing upon the defendant's capacity to make an intelligent choice. In other words, there must be a record sufficient to establish to our satisfaction that the defendant 'knows what he is doing and his choice is made with eyes open.' " (See also *United States* v. *Denno* (2d Cir. 1965) 348 F.2d 12 and *Hodge* v. *United States* (9th Cir. 1968) —— F.2d —— (case No. 20517, filed March 5, 1968.))[3]

As was said in *Adams* v. *United States* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435],[4] "The right to the assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. . . . Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. *Johnson* v. *Zerbst*, 304 U.S. 458, 468-469 [82 L.Ed. 1461, 1468, 1469, 58 S.Ct. 1019, 1024, 146 A.L.R. 357]."

Thus, the first portion of the "threefold question" is answered affirmatively.

Was there here an abuse of discretion? There is no question in the instant case that defendant promptly made known his desire to defend in propria persona. He expressed himself at length and at every opportunity. (*People* v. *Johnson*, 241 Cal.App.2d 423 [50 Cal.Rptr. 598].) Nor are we faced with the problem of sufficiency of the inquiry engaged in by the trial court. This court recently, in *People* v. *Addison*, 256 Cal.App.2d 18, 24 [63 Cal.Rptr. 626], analyzed "an intelligent conception of the consequences of his act," and quoted from *In re Connor, supra,* 16 Cal.2d 701 at p. 709

---

[3]But cf. note, "*The Right of an Accused To Proceed Without Counsel*," 49 Minn.L.Rev. 1133-1153.

[4]Cited in *People* v. *Mattson, supra,* 788 and 789 for the proposition that "Except in certain situations not here pertinent, [footnote omitted] the court cannot force a competent defendant to be represented by an attorney. (*People* v. *Rose* (1919) 42 Cal.App. 540, 553 [7] [183 P. 874]; see also *Adams* v. *United States* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435].)"

as the statement of the proper test.[5] In *Addison*, it was made clear that the crucial question as to the validity of the waiver is: Was the waiver made with knowledge of its ramifications? The defendant's inability to pass his "mini-bar exam" is not determinative. Five times this defendant sought to proceed in propria persona. His education included high school, plus a year and a half extension course study at the state university. He was experienced, both through his personal entanglements with the law and through assisting others, apparently as a "jail-house lawyer." He was a mature adult. The transcript shows him to have been articulate, logical and persistent, as well as having a grasp of the subject matter of the judge's inquiry. The sum total of the record before us compels us to conclude that the denial of defendant's motion to proceed in propria persona was an abuse of discretion. The second portion of our threefold answer to defendant's question is that the court's ruling was error.

Can the "harmless error" rule apply in this type of case? We determine that the question of whether there was reversible error in refusing to permit defendant to conduct his own defense cannot be answered by reaching a conclusion that defendant was better defended (or at least as well defended) by counsel than he would have been without the aid of counsel.

It is difficult for a person trained in the law to conclude that one unschooled in the legal arts is better able to present his defense than could an able counsel. Even were we to concede that the exceptional defendant, unschooled in the broad spectrum of the law, could conduct as able a defense in his own behalf as qualified counsel could do, it nears if not reaches the unimaginable to say that a refusal to permit a lay defendant to proceed in propria persona would have prejudiced him. Had defendant been permitted (though it was his right) to proceed in propria persona, would he have tried his case to a jury, to the judge sitting without a jury, or, as he finally did, submit his case upon the preliminary transcript? Whether, had he chosen either of the first two methods of trial, he would have fared differently than he did on his "slow plea of guilty" is at best surmise, in which we do not indulge.

---

[5] "A defendant who, *with an intelligent conception of the consequences of his act*, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance." (Italics added.)

In *People* v. *Crovedi*, 65 Cal.2d 199, 207-208 [53 Cal.Rptr. 284, 417 P.2d 868], the court spoke of the determination of the courts to recognize the dignity of the individual within the context of enforcing the criminal law, and said: "Thus, though it is clear that a defendant has no *absolute* right to be represented by a particular attorney, [footnote omitted] still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. . . . Finally, the same concern is manifested in cases where the defendant has made a mature decision to the effect that he shall defend himself without counsel. Thus, except in specified situations wherein the Legislature has determined that counsel is essential [footnote omitted] the court cannot force a competent defendant to be represented by an attorney. (*People* v. *Mattson*, 51 Cal.2d 777, 788 [336 P.2d 937]; see also *Adams* v. *United States*, 317 U.S. 269, 279 [87 L.Ed. 268, 274-275, 63 S.Ct. 236, 143 A.L.R. 435].)

"All of the foregoing cases demonstrate a conviction that the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and that that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case."

We answer the last portion of defendant's contention by quoting the words of *People* v. *Elliott*, 54 Cal.2d 498, 505 [6 Cal.Rptr. 753, 354 P.2d 225]: "Obviously, if actual prejudice must be shown, the guarantee would become meaningless. (*People* v. *Byrnes*, 84 Cal.App.2d 72, 79 [190 P.2d 290].)"[6]

Once again we are reminded of the oft given quotation of that great English jurist, Lord Chancellor Herschell: "Important as it was that people should get justice, it was even more important that they should be made to feel and see that

---

[6]We recognize that the cases of *People* v. *Shroyer*, 203 Cal.App.2d 478, 483 [21 Cal.Rptr. 460]; *People* v. *Marcus*, 133 Cal.App.2d 579, 583 [284 P.2d 848]; and *People* v. *Mayfield*, 85 Cal.App. 77, 79 [259 P. 75] have been cited as authority for the contrary conclusion. All of these cases were decided before *Gideon* v. *Wainwright*, *supra* (1963) 372 U.S. 335, 342 [9 L.Ed.2d 799, 804, 83 S.Ct. 792, 93 A.L.R.2d 733] and *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

they were getting it."[7] This is as true for the defendant as it is for the citizenry generally.

Thus we conclude that the determination adverse to the defendant's motion to proceed in propria persona in this case was either an application of the wrong standard,[8] or an otherwise erroneous conclusion which, in either event, constituted an abuse of discretion, and the error is not one subject to the now even more restricted application of the harmless error rule.[9]

The judgment is reversed.

Kaus, P. J., and Aiso, J. pro tem.,* concurred.

A petition for a rehearing was denied July 5, 1968, and respondent's petition for a hearing by the Supreme Court was denied August 14, 1968.

---

[7]See 2 Atlay, Victorian Chancellors 460 (1908).

[8]*People* v. *Addison, supra,* 256 Cal.App.2d 18.

[9]*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

*Assigned by the Chairman of the Judicial Council.