[Crim. No. 5054. Third Dist. Nov. 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
ELMER GORDON KELLETT, Defendant and Appellant.

**COUNSEL**

Robert J. Nareau, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer, Stephen Cooper, Jack Winkler, Edward W. Bergtholdt, and Nelson Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**REGAN, J.**—After a trial by jury, defendant was convicted of the following crimes: burglary of the second degree (Pen. Code, §§ 459, 460); possession of codeine, demerol, opium, and percobarb (Health & Saf. Code, § 11500); possession of marijuana for sale (Health & Saf. Code, § 11530.5); and possession of dangerous drugs for sale (Health & Saf. Code, § 11911). He appeals from the judgment, contending:

(1) The court below prejudicially erred in allowing the defendant to represent himself in propria persona.

(2) The search and seizure of the drugs and narcotics from the defendant's dwelling was a violation of the defendant's constitutional guarantee under the Fourth Amendment of the United States Constitution.

(3) The conviction of the defendant for burglary and for counts II, III and IV for possession of narcotics and drugs constituted "Double punishment for a single act" in violation of the California Penal Code [§ 654], where the act of stealing the narcotics was the fulfillment of the object of the alleged burglarious intent.

(4) That by reason of the foregoing, defendant was denied due process of law as guaranteed under the federal and state Constitutions.

FACTS

On December 25, 1967, at 10:30 a.m., the manager of Western Drug Supply in Sacramento discovered the premises of that business had been broken into and numerous drugs removed therefrom. Subsequent police investigation of the burglarized premises revealed several sets of latent fingerprints. Some were identified as belonging to the defendant. This identification was made on December 27 and the technician's report was made at 2:30 p.m. on that date and forwarded to the detective division.

At approximately 7:30 p.m. on December 27, 1967, a group of Sacramento policemen gathered near defendant's home for the purpose of arresting him. Melvin Cozzalio, an agent for the State Bureau of Narcotics, was also present. The officers had neither an arrest, nor search warrant.

Officers Stanley and Santich and Agent Cozzalio approached the front door of the defendant's house. Stanley knocked on the door. In response to the knock, defendant answered the door and was immediately placed under arrest for burglary. At this time defendant was advised of his rights under the *Miranda* decision. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Defendant's wife was also present.

A thorough search was then made of the rooms in defendant's house. The officers remained in defendant's home a considerable length of time ("most of the evening") collecting evidence. A search of the dining room area disclosed a trap door leading to the basement beneath a closet where a large cache of narcotics, barbiturates and amphetamines were found. Marijuana was also found. Drugs were also recovered from defendant's locker located in his bedroom.

The manager of the Western Drug Supply identified several of the drugs as drugs of the same brand and type taken from the store. Some of the items seized, however, were not taken from Western Drug Supply.

Upon the discovery of the large cache of drugs, defendant was again advised of his constitutional rights when he was also placed under arrest for possession of marijuana and narcotics. Defendant, in response to an inquiry as to how much marijuana was in the bag found, stated, "Approximately a kilo." Upon seeing that the officers were arresting his wife, defendant asked, "Why are you arresting her? She didn't have anything to do with it." In response to the question of who burglarized Western Drug Supply, defendant replied, "I did myself." Defendant also told the officers that prior to their arrival he had been forewarned. He therefore placed the drugs and marijuana in the hole in the floor under the closet. In the opinion of Cozzalio and chemist Agent Kvick, the marijuana found in the 29 plastic bags was packaged in the way typical of marijuana held for sale.

Defendant conducted his own defense in propria persona. He attempted to impeach the reliability of the People's witnesses to show inconsistencies in their testimony.

1. *Representation of Defendant in Propria Persona.*

■ "The defendant in a criminal case has the constitutional right to waive counsel and represent himself if he knowingly and intelligently elects to do so. [Citations.]" (*People* v. *Maddox* (1967) 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163].) When there is no question that the defendant is competent a denial of his right to represent himself is improper and will constitute error. (*People* v. *Maddox, supra; People* v. *Ruiz* (1968) 263 Cal.App.2d 216, 226-228 [69 Cal.Rptr. 473].)

■ ". . . As a constitutional right it is peculiar in that, as a condition

precedent to its exercise, the defendant must prove to the satisfaction of the court that he is competent to waive the right to counsel. ' . . . although every defendant in a criminal case has the constitutional right to represent himself if he so elects [citations], before his waiver of counsel may be accepted the trial court is duty bound to determine his competency to represent himself. (See, e.g., *In re Johnson* (1965) 62 Cal.2d 325, 335-337 [42 Cal.Rptr. 228, 398 P.2d 420], and cases there cited.) ▮ As stated in *Johnson* (at p. 335), " 'the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted [quoting from *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596]]." ' " ' " (*People* v. *Addison* (1967) 256 Cal.App.2d 18, 23 [63 Cal.Rptr. 626].)

With regard to defendant's competency to waive the right to counsel in the instant case, the record shows the following: The superior court minutes for May 15, 1968, reflect that, "The Court refused to allow Elmer Gordon Kellett to represent himself as Mr. Kellett is not competent to represent himself in pro per." The court minutes for June 5, 1968, reflect the following: "The Court granted the defendant's motion to have his attorney, Mr. Robert O'Neal relieved of his representation in order to act in Pro per. Mr. O'Neal is relieved of his representation, and the defendant, Elmer Gordon Kellett, will act in Pro per." There is no reporter's transcript of those two proceedings in the record.

The trial began on June 12, 1968, before a superior court judge who did not preside over the former proceedings. Before the trial began, a colloquy was held among the trial judge, the prosecutor, and the defendant in chambers and was reported by the court reporter. It is clear from this discussion that defendant was adamant in not having Mr. O'Neal represent him, but wanted to proceed by himself with legal "assist," but not if such "assist" would control the case. The trial court properly rejected this legal assistance since it appeared that defendant wished to act for himself. (*People* v. *Ruiz, supra,* 263 Cal.App.2d at p. 222.) No finding was made on the competency of defendant as the trial judge rightly felt that that matter had been previously determined by another judge.

Nevertheless, this presents this court with an inadequate record as regards the sufficiency of the inquiries of the court relating to the competency of defendant to waive his right to counsel at the time he was granted leave to proceed in propria persona. However, as noted in *People* v. *Santos* (1966) 245 Cal.App.2d 337, 339 [53 Cal.Rptr. 859], the rule in *Johnson* is subject to qualification. In *Santos* the court, relying on other cases, states

(at pp. 339-340): " ' "As in *People* v. *Mattson* (1959) *supra,* 51Cal.2d at pp. 788-789[1], 794[18] [336 P.2d 937], the entire record establishes that defendant was fully aware of his situation when he insisted upon representing himself, and the court was not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer." (*People* v. *Linden,* 52 Cal.2d 1, 18 [338 P.2d 397].)' (*People* v. *Collins,* 220 Cal.App.2d 563, 573-574 [33 Cal.Rptr. 638]; accord, *People* v. *Harmon,* 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329].)"

■ Furthermore, on appeal the defendant has the burden of establishing that he did not competently and intelligently waive this right. (*People* v. *Kranhouse* (1968) 265 Cal.App.2d 440, 447 [71 Cal.Rptr. 223].) While it would have been desirable to have an explicit determination of an intelligent waiver appear upon the record, it is not an absolute requirement; such waiver may be inferred from all the circumstances. (*People* v. *Santos, supra,* 245 Cal.App.2d at p. 340.)

■ The determination of whether defendant intelligently waived his right to counsel depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. (*People* v. *Kranhouse, supra,* 265 Cal.App.2d at p. 447.)

■ Here, as in *Santos,* an intelligent waiver may be inferred. The following is made clear in the record during the colloquy before trial between the trial judge, prosecutor and defendant: Defendant knew he had a constitutional right to represent himself; defendant had been reading law books and drafting arguments; defendant indicated to the court that he could represent himself better than court-appointed counsel.[1]

At the trial itself, defendant vigorously cross-examined the prosecution witnesses. He conducted his own defense by subpoenaing and questioning his own witnesses. He introduced documentary evidence, made several motions, and presented a closing argument.

We conclude from the foregoing that the waiver of counsel was freely and intelligently made. (Cf. *People* v. *Kranhouse, supra,* 265 Cal.App.2d at p. 448; *People* v. *Santos, supra,* 245 Cal.App.2d at p. 340.) In reaching this conclusion, we are well aware of the dilemma that faces the trial courts in situations of this kind (*People* v. *Addison, supra,* 256 Cal.App.2d at pp. 23-24), and thus where there is no showing of abuse, the trial court's

---

[1]We also take judicial notice of the fact that defendant was not unfamiliar with criminal court procedures. (See, *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822; [48 Cal.Rptr. 366, 409 P.2d 206]; Evid. Code, § 451.)

decision should not be disturbed. (See, *People* v. *Carter* (1967) 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].) We find no abuse here.[2]

## 2. *Search and Seizure; Chimel Case.*

Defendant contends that the search was unlawful because it was a general exploratory search of the house. He also contends that the officers had enough time to obtain a search warrant, and that their failure to do so rendered the search unlawful.[3]

■ The Attorney General notes that the record does not contain the reporter's transcript of the hearing on the motion to suppress (see Pen. Code, § 1538.5), and two motions by defendant to augment the record failed to permit the filing of the transcript. He argues that where a record is not brought up, error cannot be assumed in its absence. He also contends that in the absence of a transcript of the proceedings on the motion to suppress, the denial of that motion cannot be reviewed. (*Thompson* v. *Superior Court* (1968) 262 Cal.App.2d 98, 106 [68 Cal.Rptr. 530].) *Thompson,* however, recognizes that where a motion to suppress is denied, an appellate court may review the question of the validity of the search and seizure on appeal from the judgment of conviction. (*Thompson* v. *Superior Court, supra*, at p. 106.) The reporter's transcript of the trial adequately covers the facts underlying the search and seizure. As we stated in *People* v. *Watkins* (1967) 248 Cal.App.2d 603, 606 [56 Cal.Rptr. 734], "under these circumstances, it is preferable to forego the procedural objection and consider the contention on its merits."[4] (See also *People* v. *O'Brien* (1969) 71 Cal.2d 394 [78 Cal.Rptr. 202, 455 P.2d 138, 79 Cal.Rptr. 313, 456 P.2d 969].)

■ A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (Pen. Code, § 836, subd. (3).) ■ "Reasonable cause" is

---

[2]In *People* v. *Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868], the court states: "[T]he state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and that that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case."

[3]Defendant relies upon *United States* v. *Verdugo* (N.D. Cal. 1965) 240 F.Supp. 497. However, in *Verdugo,* the initial search was in defendant's absence, the search lasted six hours, and defendant had been under investigation for at least two months. *Verdugo* is distinguishable.

[4]It should be noted that this court denied defendant's motion to augment the record to include "Transcripts of all Proceedings on Evidentuary [*sic*] Hearings."(See also Pen. Code, § 1538.5, subd. (m).)

defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Fischer* (1957) 49 Cal.2d 442, 446 [317 P.2d 967].) ■ The officers had reasonable cause to arrest the defendant since his fingerprints were found in the burglarized premises.

■ Where a person has been the subject of a valid arrest, the arresting officer may legally conduct a warrantless search of the area considered to be in the possession or under the control of the person arrested. (*United States* v. *Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430]; *Agnello* v. *United States* (1925) 269 U.S. 20 [70 L.Ed. 145, 46 S.Ct. 4, 51 A.L.R. 409]; *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790]; *People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; see cases collected in Witkin, Cal. Evidence (2d ed. 1966) § 106, p. 104; see also, *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) Under such circumstances, it is the "reasonableness" of the search which is crucial (see *People* v. *Shepard* (1963) 212 Cal.App.2d 697, 699 [28 Cal.App.2d 297]) and this can be decided only in the concrete factual context of the individual case. (*Sibron* v. *New York* (1968) 392 U.S. 40, 59 [20 L.Ed.2d 917, 932, 88 S.Ct. 1898].)

■ Under the existing law at the time,[5] the search of defendant's residence was reasonable and legal. Defendant's fingerprints, as noted before, were found in a wholesale drug company which had been burglarized. A quantity of drugs had been stolen. The fingerprint identification had been made only five hours before the officers gathered at defendant's residence. Under the circumstances, we find that the ensuing arrest, and search incident thereto, were valid.

### 3. *Double Punishment.*

■ Defendant contends that his conviction for possession of narcotics and drugs constituted double punishment for a single act since they were the fulfillment of his burglary of Western Drug Supply.

---

[5]In *Chimel, supra,* at page 694, the court held that a search incident to a valid arrest may only encompass the suspect's person and the area " 'within his immediate control.' " In *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], however, the California Supreme Court, agreeing with several appellate court decisions, held that *Chimel* applies only to cases in which the search took place after June 23, 1969, the date of the *Chimel* decision. This search took place in December of 1967 and thus *Chimel* is not applicable.

In *People* v. *Griffin* (1962) 209 Cal.App.2d 125, 129 [25 Cal.Rptr. 667] (cited by defendant), the court states in part: "[W]e are impelled to the conclusion that at the time of appellant's arrest the narcotics were in his possession incident to the burglary. The act of stealing the narcotics was a fulfillment of the object of appellant's burglarious intent. [Citation.]" The court went on to hold that it constitutes double punishment to sentence an accused for both burglary and possession of drugs taken in the burglary.

The instant case is distinguishable from *Griffin*. As to count III, possession of marijuana for sale, it is clear that the marijuana found at defendant's house was not related to the burglary of Western Drug Supply.

In count II defendant was charged with possession for sale of codeine, demerol, opium and percobarb. In count IV he was charged with possession for sale of dexadrine and other amphetamines, seconal, dexamyl, tuinal and other barbiturates.

As to count II, one vial of demerol, "hard" codeine, percobarb and other drugs found at defendant's home and introduced into evidence were not taken from Western Drug Supply. As to count IV, the record also discloses that some drugs introduced into evidence were not taken from Western Drug Supply, including a drug containing amphetamine.

Thus, the record shows that the possession of drugs alleged in counts II and IV involved drugs taken not only from the burglary, but also drugs taken from some other sources which would support the conviction on those two counts. Under these circumstances, we hold that there was no double punishment in violation of section 654 of the Penal Code. (Cf. *In re Romano* (1966) 64 Cal.2d 826, 828 [51 Cal.Rptr. 910, 415 P.2d 798].)

### 4. *Defendant's Supplemental Brief.*

Defendant has filed his own brief in which he raises several points. Where a defendant is adequately represented by counsel on appeal, the court need not consider contentions made by defendant in his own behalf, and such documents may be stricken from the files (*People* v. *Mattson* (1959) 51 Cal.2d 777, 798 [336 P.2d 937]) and need not be enumerated or discussed in the court's opinion. (*People* v. *Clayton* (1963) 218 Cal.App.2d 364, 369 [32 Cal.Rptr. 679].) But for the purpose of fairness and completeness, we have examinined such contentions. (See *People* v. *Clayton, supra.*)

There was no violation of section 844 of the Penal Code since the police officers did not break open the door. The door was opened by defendant himself, and he was immediately placed under arrest.

As to an alleged *Miranda*-right violation, the record discloses the officers fully advised defendant of his rights pursuant to the rules laid down in that case.

 Defendant complains about the seizure of items other than the drugs. However, such items were not introduced into evidence, and defendant fails to show how this prejudiced him.

Defendant attempts to show that there were inconsistencies in the testimony of certain of the arresting officers. However, the evidence is clearly sufficient to support the verdict. (See *People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778].)

Finally, the contention regarding the involuntary nature of statements made by defendant to Agent Cozzalio cannot now be raised since no objection was raised at trial. (*People* v. *Ridout* (1957) 154 Cal.App.2d 669, 674 [316 P.2d 396].) There is nothing in the record to justify this contention.

The judgment is affirmed.

Pierce, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.