[Crim. No. 6076.   Second Dist., Div. Three.   July 16, 1958.]

THE PEOPLE, Respondent, v. RALPH CASTRO, Appellant.

Robert H. Green for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused of the crime of murder. It was also alleged in the information that defendant had been convicted of robbery. In a nonjury trial he was adjudged guilty of manslaughter. No determination was made as to the allegation of prior conviction. Defendant appeals from the judgment and the order denying his motion for a new trial.

Appellant asserts that the evidence was insufficient to support the judgment; and that the deputy district attorney was guilty of misconduct.

On March 8, 1957, about 11:30 p. m., the defendant and Raul Estrada, who were in a saloon in Los Angeles, engaged in an argument. Within a few minutes thereafter they were fighting outside, and at the rear of, the saloon. A patron of the saloon stopped the fight. Defendant and Estrada returned to the saloon, and about five minutes thereafter they began fighting inside the saloon. While they were fighting and wrestling they moved to the telephone booth. Defendant backed Estrada into the booth, and they continued wrestling in the booth. When Estrada tried to walk from the booth he fell and collapsed on the floor of the saloon. Defendant walked about half way to the outside door and then ran outside. Estrada died a few minutes after he fell. There were seven stab wounds on Estrada—one in the neck, just below the jaw; two in the left chest which penetrated the heart; another in the left chest; one in the abdomen; and two in the upper part of the left arm. The wounds were "circular" and were one-eighth inch in diameter. The cause of his death was stab wounds in the chest with penetration of the heart.

A waitress, in the saloon, testified that an ice pick was kept in the back bar; the ice pick was in the back bar on the evening of March 8, 1957; she did not see the ice pick on the "counter" that evening.

About 3:45 a. m. on March 9, a police officer knocked on the front door of defendant's residence and identified himself as a police officer. At that time another officer, who was near the rear door of the residence, flashed a light through the rear screen door, and he saw defendant inside the door with shoes in his hand. Then the defendant, who had started back into the main part of the house, said: "Let them in. They caught me at the back door." Defendant was arrested at that time.

Officer Cutts testified that, in conversations with defendant on March 9 and 10, defendant said: that he had had a running dispute with Estrada about a year and a half—that defendant attended a hair-styling school and as a result of that Estrada had constantly needled him and referred to him as a "queer," and that Estrada had accused him of "beating him [Estrada] out of $5.00"; that on March 8, when they were at the bar, Estrada began needling him about the $5.00, and they agreed to go outside and fight; while they were fighting in the rear patio, a patron of the bar, one Gaytan, came out and struck defendant and stopped the fight; they returned to the barroom, and about five minutes thereafter Estrada renewed the fight and jumped on defendant; the defendant had seen an ice pick on the counter, he and Estrada "grappled" for the ice pick and it fell on the floor; then they "went to the floor," and defendant got the ice pick; at that time defendant was struck across his back with a "cue stick"; when they came up from the floor, the defendant had the ice pick in his right hand; Gaytan struck defendant's right hand with the cue and ordered defendant to drop the ice pick; defendant recalled striking Estrada on the head with the handle of the ice pick "but not with the blade"; they wrestled into the telephone booth, and Estrada's back was against the wall; defendant did not recall stabbing Estrada with the ice pick, but he (defendant) felt that if Estrada was stabbed he must have run into the ice pick; Estrada said, "Okay"; then defendant stepped back, and Estrada began to fall forward; Gaytan chased defendant from the barroom "with the cue stick"; after leaving that place, defendant went in his automobile to a gasoline station where he smashed the ice pick handle, and "broke the blade up," with a hammer; he flushed the broken ice pick down the toilet; then he went home; after he was at home he went to the front door of the house three times because he was afraid that the police, or persons from the barroom, would come after him.

Defendant, testified that, before the first fight, Estrada called him a "queer," and said things about defendant's wife, and said that defendant owed him money; after the first fight they returned to the barroom and Estrada sat at the end of the bar, and defendant sat in a chair across the room from the bar; a few minutes thereafter, while defendant was going by the bar (and Estrada) to the rest room, Estrada got off the seat, went in front of defendant and continued the fight; when they were in front of the telephone booth, Estrada began "swinging" at defendant; Estrada had an ice pick in his hand; they were fighting in the telephone booth—Estrada was inside and defendant was outside the booth; the ice pick dropped on the floor; they both tried to get the ice pick, but the seat of the booth kept Estrada from getting it; defendant got the ice pick; at that time three or four persons, who were back of defendant, were hitting defendant on the head with some objects; one person hit him on the head with a "cue stick." Defendant testified further that he did not remember stabbing Estrada; he did not "remember deliberately stabbing him like that [indicating]"; he remembered that Estrada was trying to get out of the booth and that he (defendant) dropped the ice pick; he also remembered that some fellows chased him out, with the stick and with bottles; when defendant left, Estrada was standing and did not appear to be seriously wounded. Defendant also testified that he had been convicted of first degree robbery in 1946; he did not remember using the ice pick; he did not "remember deliberately stabbing him [Estrada]"; if he did use the ice pick, he used it in self-defense; the last he remembered "was dropping it near the entrance" of the barroom; he might have told the officers that he went to a rest room and broke the ice pick into little pieces and flushed it down the toilet.

█ Appellant's argument, regarding the alleged insufficiency of the evidence, is to the effect that the evidence shows that appellant acted in self-defense. Decedent was stabbed seven times, including a stab in the neck and two stabs in the heart. The trial judge (trier of facts herein) could have concluded, from the fact that such wounds were inflicted, that appellant was not merely defending himself. Evidence which indicated consciousness of guilt was, as follows: Immediately after the stabbing, appellant ran from the barroom; after leaving the barroom, he broke the ice pick into small pieces and flushed the pieces down a toilet; when defendant

was inside the rear screen door of his house, after the stabbing, and when one officer was at the front door of the house and another at the rear door, defendant said, "Let them in. They caught me at the back door." ▮ Whether appellant was acting in self-defense was a question of fact for the determination of the trial judge. (See *People* v. *Turner*, 86 Cal.App.2d 791, 799-800 [195 P.2d 809].) The evidence was sufficient to support the judgment.

. ▮ Appellant also contends that the deputy district attorney was guilty of misconduct in that the deputy asked a prosecution witness, Mr. Coria, if he had had a transaction or "beef" with appellant in which an ice pick was used. Counsel for appellant objected to the question on the ground that it was incompetent and immaterial. The deputy said: "[T]he case before your Honor on the transcript, contains within it a suggestion that there was a haggle over an ice pick between two people. This brings in the possibility of a self-defense. If the People have a witness who can show that, as a trademark of the defendant's activities, he customarily went around equipped with an ice pick, that would show considerable light on whether or not there was a haggle over an ice pick. In the transcript transaction, it is being offered for that purpose, to show that on a prior occasion the defendant had trouble with this witness, and the defendant produced from his own person, and used an ice pick." Counsel for appellant said that he felt that such a statement, by the deputy, was misconduct. The judge said that he (judge) did not think it was misconduct but, as he remembered the transcript, the ice pick that was used was taken from the back bar. The deputy said that he had another witness who would testify that "this is not the case, that the bar ice pick was of a different nature than the ice pick that defendant used." The objection was overruled, and the judge said: "I will strike it unless it is connected up to show that this gentleman had a plan of carrying an ice pick, and would have had one there, and you can make your motion to strike it if it is not connected up." The witness answered the question in the negative, i.e., that he had not been involved in such a transaction. The matter was not referred to again. No motion was made to strike that testimony. In view of the statement of the trial judge in overruling the objection, and in view of the negative answer, it cannot be said that appellant was prejudiced by the question.

. .The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Nourse, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.