Filed 7/29/14  P. v. Soberanis CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANK SOBERANIS,<br><br>    Defendant and Appellant. | B243922<br><br>(Los Angeles County<br>Super. Ct. No. LA059723) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barry A. Taylor, Judge.  Affirmed as modified.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Frank Soberanis (defendant) appeals from his conviction of assault with a firearm and other felonies. He contends that his jury trial waiver was invalid and that he is entitled to additional presentence custody credit. In addition, defendant seeks review of the sealed transcript of the in camera *Pitchess* review,[1] as well as the in camera review of the complaining witness's criminal record. Respondent agrees that additional custody credit is due; and citing the erroneous order staying the four prison prior enhancements, respondent seeks a remand to allow the trial court to impose or strike the enhancements. We agree that additional custody credit is due and modify the judgment accordingly. As the trial court found the prison priors were time-barred, we strike them without remand. Finding no error in the in camera reviews and no merit to defendant's remaining contentions, we affirm the judgment as modified.

## BACKGROUND

**Procedural history**

Defendant was charged with three felony counts, as follows: count 2, assault with a firearm in violation of Penal Code section 245, subdivision (a)(2);[2] count 3, possession of a firearm by a felon, in violation of former section 12021, subdivision (a)(1);[3] and count 4, carrying a loaded, unregistered firearm in violation of former section 12031, subdivision (a)(1). The information also alleged four prior convictions pursuant to section 667.5, subdivision (b), which were also alleged as qualifying felony convictions under the "Three Strikes" law (§§ 667, subd. (b)-(i), 1170.12, subd. (a)-(d)). As to count 2, the information alleged pursuant to section 12022.5, subdivision (a), that defendant personally used a firearm in the commission of the crime; and pursuant to 667, subdivision (a)(1), that defendant had suffered two prior serious felony convictions.

---

[1]   See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); Penal Code sections 832.7 and 832.8; Evidence Code sections 1043 through 1045.

[2]   All further statutory references are to the Penal Code, unless otherwise indicated.

[3]   Section 12021 was recodified at section 29800 effective January 1, 2012. (See § 16000.)

Defendant waived his right to be represented by counsel and to a jury trial. Following a court trial defendant was found guilty as charged and all the prior conviction allegations were found to be true. On August 2, 2012, after denying defendant's motion for new trial, the trial court sentenced defendant to 35 years to life in prison, comprised of 25 years to life in prison as to count 2, plus five years for each of two prior convictions pursuant to section 667, subdivision (a)(1). As to each of counts 3 and 4, the trial court imposed a concurrent term of 25 years to life, each term stayed pursuant to section 654. The trial court awarded presentence custody credit calculated as 1091 actual days in custody, with no conduct credit.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Louis Ortiz (Ortiz), his friends Matthew Lorenceau (Lorenceau) and Lourdes Ravega (Ravega) testified regarding the events that occurred the evening of August 8, 2008, when they were drinking together at a bar. Defendant was also in the bar at the time but he and Ortiz were not acquainted. After defendant made a comment to Ortiz and was told to "Mind your own fucking business," defendant drew a loaded gun from his waistband and attempted to point it at Ortiz and pull the trigger. Ortiz struggled to prevent defendant from using the gun. Defendant was ultimately subdued with the help of another bar patron after Ortiz yelled, "This guy has a gun." Ortiz took the revolver from defendant, unloaded it, and placed it on the bar.

Police arrived shortly after the struggle and detained both Ortiz and defendant while they determined what had happened. They then let Ortiz go and arrested defendant. Investigators later learned that Ortiz owned a registered firearm which was not the same weapon as the unregistered firearm recovered from the bar. The only fingerprints recovered from the gun seized at the bar did not belong to defendant or Ortiz, and no prints were found on the cartridges.

**Defense evidence**

Several defense witnesses testified that they did not see defendant with a gun. Three bartenders each testified that they were working that night but did not see a fight or

defendant with a gun, and did not see the gun at all until after the fight was over. Parking attendant Mansoor Daud (Daud) testified that when he entered the bar, he saw four people fighting, including defendant and Ortiz. When the other two men left, Daud pulled defendant and Ortiz apart and took them outside where they were detained. He never saw the gun. The valet manager saw a security guard wrestling with defendant and another person. He never saw defendant with a gun but when it was over, he saw the other person with a gun. Jonathan Flores testified that he saw defendant and Ortiz wrestling and afterward he saw Ortiz with the gun and heard him say, "I have your gun. What are you going to do now?" Flores later saw Ortiz unload the weapon at the bar and never saw defendant with the gun. The manager, Marti Rivas called the police upon hearing that there was a gun, but did not see a gun.

Defendant's parole agent testified that three days after the incident, he took a photograph of cuts on the inside of defendant's left hand which he lost when his cell phone was damaged.

The parties stipulated that tests were performed on the gun and bullets, and defendant's DNA was not found.

**Waivers**

Defendant waived his right to counsel and represented himself at the preliminary hearing. On February 5, 2009, the day defendant was arraigned on the information, he filed a written "*Faretta* waiver"[4] on a Los Angeles Superior Court form informing defendant of his constitutional rights to an attorney, a speedy trial, a jury trial, to subpoena witnesses and records, to confront and cross-examine witnesses, not to incriminate himself, to be released on bail, and to represent himself. In addition, defendant orally represented to the trial court that he had read and understood the form. After explaining the charges and possible consequences, the trial court found that

---

**4** See *Faretta v. California* (1975) 422 U.S. 806, 807, 835, in which the Supreme Court held that a criminal defendant may waive the right to counsel, if the court first makes him "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation.]"

4

defendant understood them and his rights, and that his waiver was express, knowing, and intelligent.

Defendant reported on the form that he was a high school graduate, had completed two years of college, and had worked for several attorneys doing legal research and assisting in the preparation of criminal writs and appeals. Defendant also reported that he had been granted the right to proceed in pro. per. in three prior criminal matters: a 2005 theft charge that was dismissed; another 2005 theft charge that resulted in a 16-month term of custody; and an alleged violation of section 242 in 2006 that resulted in a conviction under section 417, exhibiting a firearm.

The waiver form also warned defendant of the dangers of self-representation, the court's recommendation against self-representation, and the nature of the charges. Defendant's initials appear in boxes next to each advisement on the form, and his signature appears at the end, certifying his understanding of all warnings, his continued wish to represent himself, and the free and voluntary relinquishment of his right to counsel.

Thereafter the matter was transferred to the department of the Honorable Barry Taylor, where it remained through trial. Defendant represented himself throughout the proceedings, including the filing of motions for the appointment of investigators and experts, including DNA and fingerprint experts, as well as motions to dismiss, for continuances, discovery, discovery sanctions, a new trial, and to strike prior convictions.

On November 23, 2009, the trial court noted that during his previous appearance in court, defendant had made mention of waiving jury.[5] Defendant replied, "I'm still on the same page, what I discussed with them. Because what's going to be involved in the trial, if it is a trial, I believe that it would be better understood by a judge . . . because the toxicology involved and also it's possible that the defendant might not testify. So that is making a role in me deciding that." Defendant told the court that he would be prepared to make that decision in two weeks, after his investigator submitted his final report.

---

[5] Defendant's previous court appearance was on October 29, 2009. The reporter's transcripts do not include an oral record of that date.

Defendant informed the court of his decision on February 1, 2010, after the prosecutor raised the issue and noted that defendant intended to waive jury and have the matter tried specifically before Judge Taylor. After discussion about scheduling, the court stated: "And I fully understand, if we take a jury waiver today, the jury waiver is specifically to me, and, if I'm no longer here, then the defendant would have a right to go forward with a jury, if that's what he wants to do." Defendant replied, "Okay," and made additional scheduling suggestions. After a schedule was agreed upon, the following colloquy took place:

> "The court: Mr. Soberanis, you have a right to have a trial by jury. That is where 12 people from the community are sworn, they listen to all of the evidence, and they make any factual determinations, and they are the ones who decide whether you are guilty or not guilty. If you waive your right to a jury trial, that means the court, myself, would be the one to listen to the evidence and make all of those factual determinations that a jury normally makes. In any event, any legal decisions or any legal issues that come up, I would make those decisions whether it's a court or jury trial. You have the right to have 12 people from the community hear the case, assuming it's a jury, or, if you wish to give up that right, you can -- and it has to be a personal waiver of a jury trial . . . ."

"The defendant: Yes.

"The court: Is that what you wish to do?

"The defendant: That is what I wish to do.

"The court: Do you now give up your right to a jury, assuming I'm the judge who's going to hear the case?

"The defendant: Assuming you are the judge, because you know the case, I would be willing to waive my right to a jury. . . .

"The court: -- As a court trial? All right. . . . The court will note it as a court trial, 0 of 15 on the 19th of February.

"Mr. Marcus: And, your Honor, the people join in the jury waiver."

6

# DISCUSSION

## I. Jury trial waiver

Defendant contends that the judgment must be reversed because the record does not affirmatively demonstrate that the waiver of his right to a jury trial was knowing, intelligent, and voluntary.[6]

Although the right to a trial by jury is fundamental under both the federal and state constitutions, the right may be and is commonly waived, so long as the waiver is express, knowing, intelligent, and voluntary. (*People v. Collins* (2001) 26 Cal.4th 297, 304-305 (*Collins*); *Duncan v. Louisiana* (1968) 391 U.S. 145, 148-150, 157-158 (*Duncan*); see U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) An express waiver is knowing, intelligent and voluntary when the defendant is fully aware of the nature of the right he is giving up and the consequences of doing so, and it is the "'''product of a free and deliberate choice rather than intimidation, coercion, or deception.''" [Citation.]" (*Collins, supra*, at p. 305.) A waiver taken after the trial court has offered a benefit, or even just the possibility of an unnamed future benefit, is not voluntary. (*Id*. at pp. 309-312.)

Defendant contends that his waiver was rendered involuntary by the trial court's failure to inquire whether it was induced by threats or promises. We glean from various parts of defendant's argument that his contention is premised upon the following: defendant conditioned his waiver on a trial before Judge Taylor; he apparently had an agreement with the prosecutor that Judge Taylor would try the case; and he was not represented by counsel. None of the three premises establish improper inducement.

---

[6]  Defendant's introduction to the issue mentions his motion for new trial, brought in part on his assertion that he would not have waived a jury trial had he known that a deputy district attorney in the prosecuting attorney's office was married to a superior court judge. However, as defendant does not assign error to the denial of his motion or develop this assertion in his argument, we do not discuss the issue. (See *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2.)

The first premise is faulty, as a criminal defendant may waive a jury trial conditioned upon trial before a particular judge. (*People v. Langdon* (1959) 52 Cal.2d 425, 430-431 (*Langdon*).) Defendant suggests that this holding is no longer valid, as *Langdon* was decided in 1959, before the United States Supreme Court held that the fundamental right to a jury trial (and its concomitant right to waiver) applied to the states through the Fourteenth Amendment. (See *Duncan, supra*, 391 U.S at pp. 157-158.) California's own jury trial right has been in our Constitution since the 19th century and a provision for waiver was added in 1928. (See *People v. Pianezzi* (1941) 45 Cal.App.2d 576, 577-578; former Cal. Const., art. I, § 7.) As defendant has pointed to no authority suggesting that such a conditional waiver would be valid under the California Constitution, but invalid under the federal constitution, we consider ourselves bound by *Langdon*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

We also reject defendant's suggestion that accepting such a waiver "inherently suggests that the defendant has some information leading him to believe the judge is more favorably disposed to him than other judges" and thus implied a benefit. Perhaps defendant thought he did have such information. If so, he did not reveal it on the record, and there is nothing in the exchange with the court or the prosecutor's remarks that could be interpreted as an implied promise.

We reject defendant's second premise, as there is no evidence of a bargain between defendant and the prosecutor. Defendant infers a bargain from the asserted fact that "it was the prosecutor, not appellant, who explained the terms of the waiver in court." However, the prosecutor did not state terms or take the waiver, but simply informed the court that there would be a waiver conditioned upon trial before Judge Taylor, and that he consented to the waiver. A prosecutor's consent to the waiver does not suggest a threat or promise, as it is a requirement under the California Constitution, article I, section 16.

Finally, there is no merit to defendant's third premise, as a defendant may validly waive a jury trial while acting as his own counsel. (*People v. Kranhouse* (1968) 265 Cal.App.2d 440, 448-449.) Defendant relies on language in *Langdon* to suggest that a

8

defendant may not condition his waiver on having his trial before a particular judge unless he was represented by counsel. In that case, the California Supreme Court rejected the argument that where a defendant is represented by counsel, the trial court should nevertheless explain the nature and possible consequence of waiving a jury trial, particularly where the record did not indicate that defendant or his counsel was misled and the defendant had experienced three prior criminal trials. (*Langdon, supra*, 52 Cal.2d at pp. 432-433.) On the other hand, the trial court is required to inform a defendant, whether represented or unrepresented, of his *right* to a jury trial and the rights that accompany a trial. (See *Collins, supra*, 26 Cal.4th at p. 308.) In fact, the court did so inform defendant in this case.

Moreover, as established by defendant's waiver of counsel, he had a basic understanding of criminal law and procedure and had acted as his own counsel in three prior criminal matters. A jury waiver was defendant's own idea, based upon his assessment that the judge would better understand scientific evidence, and given defendant's experience, it is extremely unlikely that he was confused, misled, coerced, or intimidated. As nothing in the record suggests that defendant's self-representation or any other factor resulted in confusion, deception, coercion, or intimidation, we conclude that the waiver was knowing, intelligent, and voluntary.

## II. Additional presentence credit

Defendant contends that he spent 1456 actual days in custody prior to sentencing, and that the trial court miscalculated the credit when it awarded only 1091 days. Defendant is entitled to credit against his prison term for all days spent in custody on this case prior to sentencing. (§ 2900.5.) "Calculation of custody credit begins on the day of arrest and continues through the day of sentencing. [Citation.]" (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48.)

Defendant claims that the record shows that he was in custody from August 8, 2008 to August 2, 2012, and he refers to several pages of the clerk's transcript, including the information, the probation report, and the abstract of judgment, but he does not explain how these documents demonstrate his entitlement to an additional 365 days. The

probation report shows that defendant's arrest and booking date was August 8, 2008. The information was filed February 5, 2009, and our review of the minutes entered after that date show that defendant was consistently remanded after each court appearance until his sentencing on August 12, 2012. Respondent agrees that the trial court's calculation was incorrect and that defendant "appears to have been in presentence custody for the entire time" between August 8, 2008 and August 12, 2012. Although support for the parties' assertions do not appear in the appellate record, we have examined the superior court file, which shows that bail was set on February 12, 2008, at over one million dollars. As defendant was in custody at the time of the preliminary hearing, the bail amount suggests that he was in custody prior to that time as well. For that reason and as respondent agrees that the additional credit is due, we modify the judgment with the claimed amount.

Defendant also contends that he was entitled to presentence conduct credit of 218 days. A defendant sentenced under the Three Strikes law to an indeterminate life term is entitled to conduct credit, although those convicted of violent felonies are limited to 15 percent of actual presentence time in custody. (*People v. Philpot* (2004) 122 Cal.App.4th 893, 908; §§ 2933.1, 4019.) The trial court did not award any conduct credit. As defendant is entitled to credit for 1456 actual days of presentence custody, we modify the judgment to add 15 percent of that, or 218 days, for a total presentence custody award of 1674 days.

## III. *Pitchess* and "rap sheet" review

Prior to trial, defendant filed a *Pitchess* discovery motion requesting all material relating to dishonesty that might be found in the personnel files of several Los Angeles police officers, including Officers Michael Lambarth and G. Espinosa. The trial court granted the motion as to Officers Lambarth and Espinosa, conducted an in camera review, and found no discoverable items. Defendant requests that we review the sealed transcript of the *Pitchess* hearing for possible error and to verify that the custodian of the records was sworn.

We review the trial court's determination for an abuse of discretion. (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.) We have reviewed the sealed record of the

10

in camera proceedings and have determined that the custodian of the records was duly sworn. We find the transcript sufficiently detailed to review the trial court's discretion, as the court orally described for the record each document produced. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229.) Upon review of the sealed transcript, we conclude that the trial court properly exercised its discretion in determining that no documents existed within the scope of the *Pitchess* motion, and that no documents or information should be disclosed to the defense as a result of the review.

Defendant also seeks review of the trial court's in camera review of Ortiz's rap sheet. Defendant argues that appellate review is required because he was entitled to discover all felony and misdemeanor convictions for crimes of moral turpitude. Prior to the *Pitchess* hearing, the trial court announced that it had examined a printout from the district attorney's office regarding the complaining witness. The court stated that it had found nothing discoverable on the rap sheet, as there was nothing that related to "moral turpitude or violence or anything." We have reviewed the sealed rap sheet and conclude that the trial court properly exercised its discretion in determining that it contained no discoverable information.

## IV. Prison priors

Respondent contends that the trial court erred in staying the four enhancements alleged pursuant to section 667.5, subdivision (b), and asks that we remand to allow the trial court to make the necessary findings and then exercise its discretion to either impose or strike the enhancements.

Section 667.5, subdivision (b), mandates a one-year enhancement for each prior separate prison term served for any felony, so long as defendant has failed to remain free of both prison custody and another felony conviction for a period of five years. "Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken. [Citations.]" (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.) The impose-or-strike requirement does not apply after the five-year "washout" period has passed. (*Ibid*.)

11

In this case, the trial court stayed the enhancements at the request of the prosecutor even though the court had not found all the allegations of the enhancements to be true. The trial court found that defendant had suffered the prior convictions, but expressly found the enhancements "time barred" because at least five years had passed between terms. The prosecutor disagreed with the court as to "the last one" and asked that the enhancements be stayed "in an abundance of caution"; and the court obliged by staying the enhancements.

We conclude from our reading of the record that the trial court expressly rejected the allegation that defendant had not remained free of custody for a period of five years after each of the four felony convictions. As section 667.5, subdivision (b) prohibits the imposition of an enhancement when more than five years have passed between prison terms, and the trial court has expressly made that finding, imposition of the enhancements would have been equally unauthorized as staying them.

In support of the request for remand, respondent relies on *People v. Bradley* (1998) 64 Cal.App.4th 386, 390-391 (*Bradley*). There, however, a remand was made necessary in part due to the absence of written or oral findings. (*Id*. at p. 392.) Here, as the court's express finding did not permit imposition of the enhancements, *Bradley* does not support a remand. To remand simply so the trial court can strike the prior conviction enhancement based on its finding that the washout period had passed, would be to engage in a useless act. Accordingly, we exercise our power to modify the judgment by striking the four enhancements. (See § 1260; *People v. Barnwell* (2007) 41 Cal.4th 1038, 1048 & fn. 7.)

## DISPOSITION

The judgment is modified to substitute the award of presentence custody credit with the total sum of 1,674 days, comprised of 1,456 actual days in custody, plus conduct credit of 218 days. The four section 667.5 prison enhancements are stricken. As so modified and in all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modified presentence custody

credit, and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.