Filed 6/10/26  P. v. Kwadzo CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MANDIKO KWADZO,<br>　　　Defendant and Appellant. | C102050<br><br>(Super. Ct. No. 20FE011791) |

Defendant Mandiko Kwadzo appeals the trial court's denial of a continuance to investigate and file a motion for new trial after a jury found him guilty of first degree murder (Pen. Code,[1] § 187, subd. (a)) and being a felon in possession of a firearm (§ 29800, subd. (a)(1).).  His sole contention on appeal is that the trial court abused its discretion and violated his right to due process when it denied a continuance to investigate and file a motion for a new trial after granting his motion to represent himself.  We agree.  We affirm Kwadzo's conviction.  We conditionally affirm the judgment and sentence, but we remand for the trial court to grant Kwadzo a continuance to investigate and file a motion for a new trial.

---

[1]　Undesignated statutory references are to the Penal Code.

1

BACKGROUND

The events underlying Kwadzo's conviction occurred on his birthday, July 27, 2020. That evening, two men visited Kwadzo at the home he shared with his partner C.C. and their four children in West Sacramento. At some point during the visit, an argument started between Kwadzo and the men. Fearing harm, Kwadzo ran upstairs to grab his gun. He fired several shots, shattering at least one window. A neighbor saw two men leaving the residence following the gunshots.

C.C. suggested they leave the house. She placed their four children, the oldest of which was six-year-old D.H., in the back seat of Kwadzo's rental car. Kwadzo jumped in the front passenger seat, and they drove off. Kwadzo had a Glock 30S with him when he got into the car.

Kwadzo then noticed a car following them. He fired shots through the windshield at the car after the other car purportedly swung around them and attempted to block their path. C.C.'s son, D.H. was in the back seat of the car. He testified that after shooting through the windshield, Kwadzo pointed his gun at C.C. and accused her of being "a cop." Kwadzo then shot C.C. in the side of her head. After the shooting, the car drifted off the road into some type of water.

Kwadzo testified on his own behalf. He testified that after the car stopped following them and C.C. made a wrong turn, Kwadzo suggested he and C.C. switch seats so that he could drive and she could tend to the children. To make the switch without stopping, Kwadzo told her to lean her seat back so that he could sit on her. Kwadzo testified that as they were trying to switch seats, he accidentally shot C.C. The car sped up, rolled over the guardrail, and rolled down a hill about three or four times, before landing in the river. After being informed that Kwadzo shot C.C., officers arrested Kwadzo at the scene. The gun that killed C.C. was never found although five .45-caliber shell casings and one .45-caliber projectile were recovered from within the car.

2

The People charged Kwadzo with two counts:  first degree murder (§ 187, subd. (a)) and felon in unlawful possession of a firearm (§ 29800, subd. (a)(1)).  The People also alleged a firearm enhancement for personally and intentionally discharging a firearm (§ 12022.53, subd. (d)) and several aggravating factors under California Rules of Court, rule 4.421.

*Jury Trial*

The primary issue at trial was whether Kwadzo intentionally shot C.C.  The evidence indicated C.C. had been shot twice.  Much of the evidence offered at trial focused on whether the gun used to kill C.C. was an automatic or semiautomatic firearm.  In automatic mode, multiple rounds could be discharged if the trigger was pulled once.

The People's expert testified that he tested Kwadzo's other weapon, which was found at the West Sacramento scene, and which had been altered to switch between automatic and semiautomatic mode.  During the testing, the firearm discharged multiple bullets very quickly in both automatic and semiautomatic modes.  The People's expert did not offer an opinion on whether the gun that killed C.C. was in automatic or semiautomatic mode when Kwadzo shot her.

Based on the materials he reviewed, Kwadzo's expert testified that the gun that killed C.C. was in automatic mode when she was shot.  At trial, Kwadzo's expert acknowledged that he did not know about the West Sacramento crime scene or the evidence collected from that scene until two weeks before his testimony.  During her closing argument, the prosecutor mentioned twice that the defense expert did not have all the relevant information when he concluded that the firearm that killed C.C. was in automatic mode.

The jury found Kwadzo guilty on both counts.  The jury also found the firearm enhancement true.  After the verdict, the People asked the trial court to dismiss three of the seven aggravating sentencing factors, leaving the remaining four for the court to

3

consider at sentencing.  After Kwadzo waived time, sentencing was scheduled for September 6, 2024.

*Marsden Hearing*

On September 6, 2024, right before the court trial on the aggravating sentencing factors, Kwadzo requested a *Marsden*[2] hearing.  He asked the trial court to appoint substitute counsel because of a conflict of interest.  Kwadzo believed he had a right to a new trial based on ineffective assistance of counsel and counsel refused to investigate and file the motion, telling Kwadzo to raise his concerns on appeal instead.

Kwadzo identified two categories of complaints with defense counsel's performance.  One set of complaints concerned counsel's performance and interaction with Kwadzo outside the courtroom.  Specifically, Kwadzo contended that trial counsel "failed to perform investigation critical and necessary to the defense."  Counsel also failed to confer with Kwadzo in preparing the defense.  "There was no communication for months at a time."  Kwadzo stated that he asked for discovery before trial started, and defense counsel shared hundreds of pages of the requested discovery with him on August 26, 2024, a month after trial and just 11 days before the sentencing hearing.  Kwadzo also stated that he did not receive a report of his "gun being examined for fully automatic functions" during trial.

As to defense counsel's courtroom performance, Kwadzo argued that counsel failed to object to prosecutor misconduct, failed to impeach the People's witnesses, and failed to make a motion for mistrial based on the violation of his Sixth Amendment right to confront D.H., who "was too traumatized for cross-examination."  He was also concerned that defense counsel allowed the prosecutor to put on perjured testimony without objection.

---

[2]     *People v. Marsden* (1970) 2 Cal.3d 118.

Defense counsel responded that he did not file a motion for new trial based on ineffective assistance of counsel because he did not believe there were grounds for the motion. He also assured Kwadzo that he would file an appeal and that Kwadzo's appellate counsel would be able to request a copy of the transcript. Counsel also informed Kwadzo that the issue of ineffective assistance of counsel could be evaluated on appeal and promised to cooperate with appellate counsel in assessing that claim by providing any information that is not contained in the record.

Defense counsel did not understand Kwadzo's criticism about the amount of time counsel spent meeting with Kwadzo because counsel "spent numerous hours conferring with … Kwadzo relative to the trial." Counsel acknowledged Kwadzo "criticized" him about a misrepresentation in Detective Robert Peters's testimony about Kwadzo's guns. While counsel acknowledged, "there may have been a misrepresentation," he did not believe the testimony was determinative to the outcome of the trial.[3]

The trial court asked defense counsel to address Kwadzo's specific claims about the discovery counsel provided after trial. Counsel claimed that the discovery he provided "had to do with shell casing comparisons and things that were not in dispute in his trial."

---

[3] During trial, defense counsel acknowledged that he "forgot" to pursue a line of questioning during his cross-examination of Detective Peters about his experience with modified guns, a subject Detective Peters discussed during his direct examination:

"[Defense Counsel]: Right. Okay. Now as far as your experience with modified Glock handguns -- [¶] [Prosecutor]: Your Honor, I'm gonna object -- [¶] THE COURT: Sustained. There was only one question asked on recross regarding the potential interference in a Safe interview so leave it to that. [¶] [Defense Counsel]: Your Honor, if I could have some leeway, I -- this is a line of questioning that I forgot to ask this detective about -- about his experience. [¶] THE COURT: Come on up and I'll -- let me hear what the questions are. [¶] (Whereupon a sidebar discussion was had.) [¶] THE COURT: No further questions, [counsel]? [¶] [Defense Counsel]: Yes."

In response, Kwadzo stated the discovery was "critical evidence" for his trial. Specifically, "[i]t was based on the report of the gun being examined for fully automatic functions. The magazines not being tested that was left at the scene." Counsel shared the "extra 800 pages" of discovery a month after trial, and Kwadzo needed help getting the transcript and going through it to determine "all issues that we have." Defense counsel declined to help Kwadzo obtain a transcript or file a new trial motion based on ineffective assistance of counsel, prompting Kwadzo to request substitute counsel to "help [him] out."

Before ruling, the trial court asked defense counsel whether he used the discovery Kwadzo referenced in preparing and conducting cross-examination at trial. After counsel stated that he had, the court stated that ineffective assistance of counsel was not one of the "delineated grounds" for a new trial motion. The trial court also stated that had Kwadzo filed a new trial motion, the court would have denied it along with Kwadzo's request for a copy of the reporter's transcript for the purpose of filing the motion.

Furthermore, the trial court did not believe there was ineffectiveness of counsel. The court noted that defense counsel was in possession of all evidence and reports from which to base his examination and cross-examination of the witness and concluded that "this is a claim that may be made on appeal." The court denied Kwadzo's request to appoint substitute counsel because "there [was] no breakdown" in the attorney-client relationship that "would make it impossible" for counsel to "effectively represent the defendant."

*Faretta Motion and Request for Continuance to File New Trial Motion*

After the trial court denied his request for appointment of substitute counsel, Kwadzo requested to represent himself. The court stated, "Do you understand that merely by granting this request and allowing you to represent yourself going forward, the Court will not be continuing this case, and the matter will proceed today with hearing on the priors as well as — hearing on the aggravating circumstances, as well as judgment

6

and sentence. And I will not be continuing either of those hearings. [¶] Do you understand?" Kwadzo responded that he "would like to file for new trial motion based on ineffective assistance of Counsel." After the court stated it already indicated it "would deny such a motion" and would not "continue the trial on the priors," Kwadzo responded that denying his motion would be an "abuse of the Court's discretion." The court then stated that it believed Kwadzo was making the request to represent himself "for the sole purpose of delaying sentencing," which Kwadzo denied. Kwadzo repeated that he "would like to file a motion for new trial based on inadequate preparation by counsel," and that he was "not delaying anything."

Following Kwadzo's statement, the trial court advised Kwadzo of his rights under *Faretta v. California* (1975) 422 U.S. 806, made a finding that Kwadzo knowingly, intelligently, and voluntarily decided to represent himself, and granted Kwadzo's motion. Before the court could proceed with the trial on the aggravating factors, Kwadzo stated again that he would like to file a new trial motion. The court denied the request, stating that it was "not granting leave to file" because "ineffective assistance of counsel … is not [] grounds for a new trial."

The trial court proceeded to the trial on the aggravating factors. Kwadzo interrupted those proceedings again to raise two additional grounds for a new trial motion: (1) newly discovered evidence and (2) juror misconduct. Specifically, Kwadzo argued that he did not have a chance to have the full discovery and now he did. He further argued that the newly discovered evidence defense counsel shared with him after the trial showed the People did not test the magazines they argued were used in the shooting. Nor did Kwadzo's expert receive the report on the testing the People's expert conducted on Kwadzo's other gun. He also claimed a juror told Kwadzo's family that the juror did not believe Kwadzo was guilty.

The trial court rejected both grounds. The evidence Kwadzo identified was not newly discovered and was used by defense counsel at trial. The court's assessment,

7

Kwadzo responded, was not based on the "specific record from the trial." For the juror misconduct claim, the court noted for the record that it had not received any declarations indicating juror misconduct or contact between a juror and Kwadzo or Kwadzo's family members.

After ruling that the two additional grounds Kwadzo raised were not valid grounds for a new trial motion, the trial court found three aggravating sentencing factors true beyond a reasonable doubt. Before it could proceed with sentencing, however, Kwadzo once again asked the court to continue sentencing and allow him time to prepare a motion for new trial: "I provided pretty much a lot of legal cause to delay and to excuse judgment, so that we can prepare the things I said that I wanted to prepare." Even though ineffective assistance of counsel was not listed in section 1181, it was a basis on which the court could grant him a new trial, Kwadzo argued.

The court stated that it would deny a new trial motion because defense counsel presented an "exceptional defense." The court explained further, "My observations having sat through the trial, that he cross-examined the People's witnesses with skill and diligence, hitting the pertinent facts to present your defense to the jury. [¶] He didn't go off on tangents but was focused on those facts which would lead a jury to a reasonable possible conclusion that the shooting in this matter was an inadvertent or accidental discharge." In the court's view, defense counsel "presented a very skilled and effective representation."

Kwadzo responded that the trial court was not allowing him to present evidence of defense counsel's ineffectiveness, like, for example, counsel's failure to object to perjured testimony. Kwadzo challenged the court's disagreement with his claim that counsel was ineffective given the court's refusal to allow him to present evidence of counsel's ineffectiveness. The court stated that Kwadzo could raise the issue on appeal.

After hearing the victim impact statement from C.C.'s grandmother, who appeared remotely, the trial court sentenced Kwadzo to an indeterminate term of 50 years to life for

8

the murder conviction and gun enhancement, and to a consecutive three-year term for his felon in possession of a firearm conviction.  The court also imposed fines and fees.

Kwadzo timely appealed.

## DISCUSSION

On appeal, Kwadzo contends the trial court abused its discretion and violated his right to due process when it denied a continuance to allow him to investigate and file a motion for new trial based on ineffectiveness of counsel after granting his *Faretta* motion to represent himself.  The People contend that the trial court "properly declined" Kwadzo's request for a continuance because Kwadzo "had no legitimate grounds to seek a new trial."  The People also contend Kwadzo failed to show any prejudice from the court's denial of a continuance.

### 1.    *Standard of Review and Legal Principles*

We review a trial court's decision granting or denying a continuance for an abuse of discretion.  (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.)  Absent a showing of an abuse of discretion and prejudice, we will not reverse the trial court's decision.  (*People v. Doolin* (2009) 45 Cal.4th 390, 450.)

A trial court's decision that is deemed an abuse of discretion has been described as a decision that " 'exceeds the bounds of reason' " or as one that is " 'arbitrary, capricious, patently absurd, or even whimsical.' "  (*People v. Seigler* (2025) 116 Cal.App.5th 596, 609.)  A court's discretion, however, is not a " ' " 'whimsical, uncontrolled power.' " ' "  (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 737.)  " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action … ." ' "  (*Ibid.*, quoting *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)  The court's proper exercise of its discretion, therefore, requires knowledge and consideration of the "legal principles essential to an informed, intelligent and just decision."  (*People v. Lara* (2001) 86 Cal.App.4th 139, 165.)  Where a

ruling " 'transgresses the confines of the applicable principles of law' " defining the scope of discretion, the court abuses its discretion. (*Jacobs*, at p. 737.)

In deciding whether to grant a continuance, trial courts may not exercise their discretion in such a manner as to deprive the defendant or defendant's counsel of a reasonable opportunity to prepare. (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.) " 'That counsel for a defendant has a right to reasonable opportunity to prepare for a trial is as fundamental as is the right to counsel.' " (*People v. Maddox* (1967) 67 Cal.2d 647, 652.) The opportunity to prepare is no less fundamental when a defendant elects to proceed pro se. "While it is true that a defendant, who chooses to conduct his defense in pro. per. does so subject to the disabilities normally attendant upon the status as a prisoner [citation], a pro se defendant must be given a reasonable opportunity to prepare a defense." (*People v. Cruz* (1978) 83 Cal.App.3d 308, 324.) The denial of a continuance after a trial court grants a defendant's request for self-representation could deprive a defendant of the opportunity to prepare a defense. (*People v. Wilkins* (1990) 225 Cal.App.3d 299, 304-305; *People v. Hill* (1983) 148 Cal.App.3d 744, 756.) "To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel." (*Maddox*, at p. 653.) Therefore, when a trial court grants a defendant's request to proceed pro se, it has been held an abuse of discretion and a denial of due process to deny a request for a reasonable continuance to allow the in propria persona defendant to prepare a defense. (*Id.* at pp. 653-655; *Wilkins*, at p. 304; *Hill*, at p. 757.)

Courts have made an exception only where the record demonstrates the trial court expressly conditioned the granting of an untimely *Faretta* motion on the defendant's express waiver of a continuance. (See, e.g., *People v. Jenkins* (2000) 22 Cal.4th 900, 1038 [court warned the defendant that a request for a continuance would be a basis for denying *Faretta* motion, and the defendant accepted pro se status on the understanding that no additional time would be granted]; *People v. Clark* (1992) 3 Cal.4th 41, 110

[court granted *Faretta* motion only after the defendant "expressly represented he was able to proceed without a continuance"], overruled on other grounds in *People v. Pearson* (2013) 56 Cal.4th 393, 462; *People v. Rudd* (1998) 63 Cal.App.4th 620, 626 [*Faretta* motion granted only after the defendant expressly stated he would be able to proceed without a continuance].) Even in that context, "the most prudent course would be to deny the *Faretta* motion rather than condition its grant upon denial of the continuance." (*People v. Hill, supra*, 148 Cal.App.3d at p. 760.)

    2.    *Analysis*

        *a. Denial of Continuance*

Kwadzo contends the trial court abused its discretion and deprived him of due process when it denied him a continuance to investigate and file a motion for a new trial after granting his motion to represent himself. We agree.

"[T]he denial of a continuance may be so arbitrary as to deny due process." (*People v. Beames* (2007) 40 Cal.4th 907, 921.) " '[T]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.' [Citation] Instead, '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*Ibid*.)

"The trial court has broad discretion in ruling on a new trial motion, and its decision will be disturbed only for clear abuse of that discretion." (*People v. Iraheta* (2014) 227 Cal.App.4th 611, 619.) Such an abuse of discretion occurs when the court bases its decision on an incorrect legal standard. (*Ibid*.)

To be sure, the text of section 1181 expressly limits the grant of a motion for new trial to the nine grounds enumerated in the statute. (*People v. Fosselman* (1983) 33 Cal.3d 572, 582.) And ineffectiveness of trial counsel is not one of them. (§ 1181.) Trial courts, however, have a duty to ensure that a " 'trial is conducted with solicitude for the essential rights of the accused.' " (*Fosselman*, at p. 582.) That includes the right to

11

effective counsel.  (*Ibid*.; see *People v. Clark* (2016) 63 Cal.4th 522, 630.)  The Legislature has no authority to limit by statute a court's constitutional obligation to ensure that a defendant is accorded due process.  (*Fosselman*, at p. 582.)  Therefore, our Supreme Court has stated that section 1181 "should not be read to limit the constitutional duty of trial courts to ensure that defendants be accorded due process of law." (*Fosselman*, at p. 582.)  " '[I]n appropriate circumstances, the trial court should consider a claim of ineffective assistance of counsel in a motion for new trial, because "*justice is expedited* when the issue of counsel's effectiveness can be resolved promptly at the trial level." ' "  (*People v. Watts* (2018) 22 Cal.App.5th 102, 117.)

Moreover, newly discovered evidence *is* one of the statutorily enumerated grounds for the granting of a new trial.  Under section 1181, subdivision 8, a defendant may move for a new trial "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial."  In this case, Kwadzo's defense to the murder charge was that the shooting of C.C. was an accidental discharge of the firearm.  Kwadzo told the court that just 11 days earlier, he had been provided with over 500 pages of discovery that he had not previously had access to.  The discovery was related to an examination of a firearm and shell casing comparisons, evidence that was certainly relevant to Kwadzo's defense.  While the trial court heard from Kwadzo's defense counsel that he had the information in preparation for trial, his attorney also indicated at one point in the trial that he had forgotten to cross-examine a witness on the modification of firearms.  We do not know whether the information contained in the discovery would have resulted in the granting of a new trial, but now acting as his own attorney, Kwadzo should have had the opportunity to fully review the evidence and determine the course to take.  However, the court's misunderstanding of the law concerning the proper basis for a new trial motion foreclosed Kwadzo's opportunity to investigate and litigate any motion for new trial.  When it granted the *Faretta* motion, the court should have also granted him reasonable

12

time to investigate and file the motion. (*People v. Wilkins, supra*, 225 Cal.App.3d at p. 304.) A court's proper exercise of its discretion requires knowledge and consideration of the "legal principles essential to an informed, intelligent and just decision." (*People v. Lara, supra*, 86 Cal.App.4th at p. 165.) Under these circumstances, the court's refusal to grant the continuance was " 'so arbitrary as to violate due process.' " (*People v. Beames, supra*, 40 Cal.4th at p. 921.)

The trial court's assessment of defense counsel's courtroom performance as "exceptional" does not change our conclusion. Kwadzo was clear that his claim for ineffective assistance of counsel included conduct outside the courtroom: counsel's failure to consult with him and failure to provide material discovery to Kwadzo and Kwadzo's expert. That the prosecutor mentioned twice during her closing argument that the defense expert did not have all the relevant information when he concluded that the firearm that killed C.C. was in automatic mode, offers enough credence to Kwadzo's claims to warrant further inquiry. Not only could the implication that the expert did not receive all relevant materials raise questions about his preparedness, but it could have also affected how the jury viewed his conclusions. This specific claim that the expert did not receive material information would require investigation beyond the trial court's courtroom observations about counsel's performance. (See *People v. Smith* (1993) 6 Cal.4th 684, 693 [stating that where the defendant makes a " ' "colorable claim" ' " of inadequacy for matters outside the courtroom, the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial].)

Kwadzo also raised juror misconduct as a basis to continue the sentencing. The court's response was that it had no corroborating evidence of jury misconduct, like sworn testimony or an affidavit indicating any type of jury misconduct. Having just been granted *Faretta* status moments earlier, we question when Kwadzo would have had the opportunity to procure such. Had the court granted a reasonable continuance, Kwadzo would have had the opportunity to determine whether to pursue such argument.

13

Lastly, we take issue with the trial court's determination that Kwadzo could raise the issues of ineffective assistance of counsel and late discovered evidence on appeal. Unless the record on appeal includes an explanation as to why trial counsel acted or failed to act in the manner challenged, or unless counsel was asked for an explanation and failed to provide one, a claim on appeal that trial counsel was ineffective is at risk of being rejected. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [claims of ineffective assistance of counsel are often more appropriately litigated in a habeas corpus proceeding].) Here, Kwadzo was denied the opportunity to fully review the newly discovered evidence and investigate whether it constituted a basis for a motion for new trial. By depriving Kwadzo of a continuance to evaluate such, the trial court deprived Kwadzo of a reasonable opportunity to fully present his claims to the court and jeopardized Kwadzo's available arguments on direct appeal.

Under these circumstances, the trial court abused its discretion and deprived Kwadzo of his right to due process.

### b. Limited Remand

The People contend that because the record does not show Kwadzo was harmed by the trial court's denial of continuance, we should affirm the judgment. Citing *People v. Braxton* (2004) 34 Cal.4th 798, Kwadzo contends that where, as in this case, "a trial court has refused to hear a motion for new trial before sentencing and the record on appeal is not sufficient to allow a reviewing court to determine with certainty whether or not the new trial motion would have been meritorious as a matter of law, then a limited remand is appropriate." Kwadzo has the better argument.

In denying Kwadzo a reasonable continuance, the trial court deprived Kwadzo of the opportunity to investigate and file a motion for new trial. More specifically, the court made it impossible for Kwadzo to make a record from which we could assess whether his new trial motion was meritorious, and whether the trial court's ruling prejudiced him. (*People v. Braxton, supra*, 34 Cal.4th at pp. 818-819.) Accordingly, we will remand the

matter for the trial court to grant a reasonable continuance to allow Kwadzo to investigate and file a new trial motion.

## DISPOSITION

We conditionally affirm Kwadzo's conviction, including the trial court's findings on the aggravating sentencing factors, and Kwadzo's sentence. We remand the matter and direct the trial court to grant Kwadzo a reasonable continuance to investigate and file a motion for new trial. If the court grants a new trial, the conviction and sentence shall be reversed. If the court denies a new trial, the conviction and sentence shall stand.

/s/
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
KRAUSE, J.